AUGUST SCHULTZ, Appellee, *vs.* THE HENRY ERICSSON COMPANY, Appellant.

*Opinion filed June 16, 1914—Rehearing denied October 7, 1914.*

1. PLEADING—*when a statement of claim in municipal court is sufficient to sustain action under a statute.* A statement of a claim in the municipal court of Chicago in a case of the fourth class, which alleges, in substance, that the plaintiff sustained injuries on a certain date while in the employ of the defendant as a common laborer, by reason of the defendant's failure to furnish him a proper, safe and sufficient scaffold on which to work, is sufficient to sustain an action under the Employment act even though the statement of claim makes no reference to such statute; and such statement is also sufficient to apprise the defendant of the nature of the case.

2. MASTER AND SERVANT—*what not necessary to authorize recovery for violation of Employment act.* In order to recover, under the Employment act, for an injury due to an unsafe scaffold, it is not essential to show that the employer knew, or had good reason to suppose, that the scaffold was not constructed in a safe, suitable and proper manner, and that notice of such fact was brought to his attention by complaint of the employee, or otherwise.

3. SAME—*provision of Employment act as to safe scaffolds is mandatory.* The language of the Employment act that scaffolds shall be so constructed as to be safe and afford adequate protection to the person working thereon is mandatory, and the employer can not escape liability for a violation of the statute in constructing an unsafe and dangerous scaffold, even though he may have believed the scaffold was safe.

4. SAME—*willful violation of Employment act does not require "a reckless disregard" of its provisions.* To constitute a willful

violation of the Employment act it is not necessary that there should be "a reckless disregard" of its provisions, and the employer is liable not only when the dangerous conditions are known to him, but also when by the exercise of reasonable care he could have discovered them.

5. NEGLIGENCE—*what constitutes proximate cause is ordinarily a question of fact for the jury.* What constitutes the proximate cause of an injury is ordinarily a question of fact for the jury, to be determined from a consideration of all the attending facts and circumstances shown in evidence.

APPEAL from the Branch "C" Appellate Court for the First District;—heard in that court on writ of error to the Municipal Court of Chicago; the Hon. HOSEA W. WELLS, Judge, presiding.

FRANK M. COX, and R. J. FELLINGHAM, for appellant.

MEEK & McDONALD, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This was an action of the fourth class in the municipal court of Chicago for personal injuries sustained by appellee by falling from a scaffold or runway on which he was working while in the employ of the appellant. A trial was had, in which the jury assessed the damages of plaintiff at $1000. Motions for a new trial and in arrest of judgment were overruled and judgment entered on the verdict, from which appellant prosecuted a writ of error to the Appellate Court for the First District, where the judgment was affirmed. A certificate of importance and an appeal were granted by that court and the case certified to this court for further review.

Appellant's chief contentions are: (1) That the statement of claim is insufficient to sustain an action under the statute for willful violation of the provisions of the Employment act relating to the construction of suitable scaffolds, hoists, cranes or other mechanical contrivances used in the erection or construction of buildings, etc.; (2) that

the evidence fails to establish a case of common law negligence against appellant; (3) that even if the statement of claim is sufficient to permit a recovery under the statute, appellee has failed to establish by his proofs such a willful violation of the statute as to authorize a recovery thereon; and (4) that the manner of the construction of the scaffold was not the proximate cause of the injury. The contentions will be considered in the order above enumerated.

From the evidence it appears that on and prior to June 21, 1909, appellant was engaged in the construction of a steel and brick building on Indiana avenue, in Chicago, on which the work had been completed to about the level of the second floor, where the masons were then at work on the north wall. The materials used,—brick and mortar,—were loaded in wheelbarrows on the ground floor. The wheelbarrows were run onto a hoist near the center of the building and by it raised to the second floor, where they were wheeled by the workmen over scaffolds or runways to the place where such materials were used. Around the hoist a platform was built, from which a scaffold or runway was constructed to the west wall and along the west wall to the north wall, where the masons were at work. The runway from the platform to the west wall was about five or six feet in width and along the west wall it was between ten and eleven feet in width, being constructed of thirteen ten-inch planks laid lengthwise along the wall. Along the west wall, and about a foot from the wall, mortar boards were laid, and next to the mortar boards the brick were dumped in piles about two feet high along the full length of the runway, the piles sloping down to a few brick on the east edge of the piles, which extended onto the runway, leaving a clear space of about five or six feet from the pile of brick to the east side or edge of the runway. No guard rails or other contrivances were constructed along the runway to prevent men or materials from falling off, but a single plank platform was laid about eighteen inches

east of the runway, for the purpose of enabling the men
at work on the runway to step on it in case they lost their
balance and fell from the runway. In going to and return-
ing from the place where the masons were at work on the
north wall the wheelers would be required to pass one an-
other at various places on this runway. At the time of
his injury appellee was about thirty-five years of age and
had had about two years' experience in such work, having
at various times worked for appellant and other contractors
at this kind of work. At the time he was injured appellee
was engaged in wheeling a wheelbarrow load of mortar to
the masons at work on the north wall of the building. The
hoist was so constructed that when a loaded wheelbarrow
came up an empty one would go down. The loaded wheel-
barrows, as they came up, would be taken from the hoist by
the men in rotation as they returned from their trip, so
that on each trip the wheelers would have a different wheel-
barrow. When the wheelbarrow came off the hoist its
handles would be to the south, and the wheeler would take
hold of the handles, back the wheelbarrow off, turn to the
west and wheel his load to the end of the runway leading
to the west wall, and thence north along the runway on
the east side of the west wall to the place where the masons
were at work. At this time seven or eight men were en-
gaged in wheeling materials in iron wheelbarrows, some
being filled with brick and others with mortar. About
twenty-five wheelbarrows were employed altogether on the
work. In taking the wheelbarrow from the hoist to the
place where the masons were at work the men wheeling the
loaded wheelbarrows would pass those returning with the
empty wheelbarrows at various places on the runway. Ap-
pellee commenced work at about eight o'clock that morn-
ing and was directed by the superintendent to go to work
on the second floor, wheeling brick and mortar to the
masons. The first trip he made he noticed the width be-
tween the brick piles and the east edge of the runway or

scaffold and the piles of brick but had no trouble in passing prior to the last trip. At about 10:30 o'clock in the morning he received a load of mortar as it came up the hoist and proceeded to the west runway or scaffold and north on it about twenty feet, where he met another one of the laborers, Donato Magliano, returning on the westerly side of the runway with an empty wheelbarrow. Magliano stopped with his wheelbarrow as close to the brick pile on the west as he could, and appellee, with his wheelbarrow on the second plank from the east edge of the runway, attempted to pass Magliano. The trays or hoppers on the wheelbarrows were about two and a half feet in width, so that a space of about two inches, only, was left between the trays of the wheelbarrows in passing when the wheeler walked on the second plank or fifteen inches from the unguarded edge of the platform, with the outside edge of the tray of the heavily loaded wheelbarrow even with the edge of the runway. In attempting to pass Magliano a wire in the rim of the tray of the wheelbarrow used by appellee touched the other wheelbarrow and unbalanced him, and his wheelbarrow dumped over on the east edge of the scaffold, throwing most of the mortar on the lower floor and appellee off the runway and over the single plank east of the runway to the first floor and seriously injured him. Appellee did not know of the wire projecting from his wheelbarrow, as each trip he made he had a different wheelbarrow. As a result of the accident he was removed to the hospital in a dazed condition, where he was confined to his bed for a period of two or three weeks as a result of injuries to his head, shoulders, chest and ankle, the injury to the ankle being the most serious, as some of the ligaments were torn, necessitating the putting of the foot in a plaster cast. As a result of his injuries he was unable to work for a period of about thirty weeks and required to receive occasional treatments from his physician for a period of about a year and a half. It was stipulated on the trial

that appellee had none of the injuries of which he now complains before this accident.

Appellant introduced no evidence, and at the close of plaintiff's case moved the court to instruct the jury to find the defendant not guilty, and submitted the proper instruction therefor in writing. The court denied the motion, and the jury returned a verdict of guilty and assessed plaintiff's damages at $1000, upon which the court entered judgment, after overruling motions for a new trial and in arrest of judgment.

The substance of the statement of claim filed by appellee, in so far as it is material to be considered here, is, that it is for injuries sustained June 21, 1909, while in the employ of appellant as a common laborer, by reason of its failure to furnish him a proper, safe and sufficient scaffold upon which to work, etc., to the damage of appellee in the sum of $1000. Appellant insists that these allegations of the statement of claim are insufficient to sustain an action under the statute, for the reason that no reference is made to the statute in the statement of claim. Section 3 of the Municipal Court act (Hurd's Stat. 1913, p. 723,) provides that in all cases of the fourth and fifth classes the issues shall be determined without other forms of written pleading than those expressly prescribed and provided for. Section 40 of the same act provides that suits of the fourth class shall be commenced by filing a *præcipe* for a summons and a statement of plaintiff's claim, and "if the suit be for a tort, it shall consist of a brief statement of the nature of the tort and such further information as will reasonably inform the defendant of the nature of the case he is called upon to defend, but nothing herein contained shall be construed to require the statement of claim in any action for a tort to set forth the cause of action with the particularity required in a declaration at common law." In *Edgerton* v. *Chicago, Rock Island and Pacific Railway Co.* 240 Ill. 311, we had occasion to consider the nature and effect of a

264 — 11

statement of a plaintiff's claim or cause of action in suits of this class. It was there said: "As to this class of cases under the Municipal Court act, where no written pleadings are required, the same rule will govern as controls the form of actions before justices of the peace. We have held that it is the well settled practice that in such courts * * * the party suing need not even name his action, or if misnamed, that will not affect his rights, if upon hearing the evidence he appears to be entitled to recover and the court has jurisdiction of the defendant and of the subject matter of the litigation." In *Houren* v. *Chicago, Milwaukee and St. Paul Railway Co.* 236 Ill. 620, we affirmed a judgment against the railroad company for obstructing a public highway by stopping a train thereon for more than ten minutes, in violation of section 77 of chapter 114, in which the statement of claim made no reference whatever to the statute. The holding in each of those cases is in accordance with both the letter and the spirit of the Municipal Court act and is decisive of the objections urged against the statement of claim in this case.

Neither do we think the statement of claim filed was insufficient to reasonably inform appellant of the nature of the case appellant was called upon to defend when it charged that appellee was injured by reason of the failure to furnish him a *proper, safe and sufficient scaffold upon which to work.* The charge is almost in the language of the statute, with the provisions of which the appellant is charged with knowledge as a matter of law.

Whether or not appellee established a case of common law negligence against appellant is wholly immaterial, inasmuch as we are of the opinion that appellee made a *prima facie* case, under the statute, for a failure to furnish and maintain a safe, suitable and proper scaffold upon which he should work. The statute (Hurd's Stat. 1913, chap. 48, par. 79,) provides as follows: "That all scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical con-

trivances, erected or constructed by any person, firm or corporation, in this State, for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated, as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon." Paragraph 82 of the same act authorizes the State factory inspector to inspect any such scaffold and prohibit its use when found to be dangerous to life or limb, etc.; and by paragraph 88 a penalty of not less than $25 nor more than $500, or imprisonment for not less than three months or more than two years, or both, is provided for a violation of the provisions of the act. It further provides that "for any injury to person or property, occasioned by any willful violations of this act, or willful failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby,".etc.

Appellant insists that in order to recover under this statute it must be shown that the employer knew, or had good reason to suppose, that the scaffold in use was not erected and constructed in a safe, suitable and proper manner, and so constructed, placed and operated as to give adequate protection to the lives and limbs of those employed thereon, and that notice of such fact must be brought home to the employer by complaint from the employee or otherwise, or he will not be liable. With this contention we are unable to agree. Notice of the conditions is notice of the dangerous conditions, if the conditions are, in fact, dangerous. (*Piazzi* v. *Kerens-Donnewald Coal Co.* 262 Ill. 30.) This much is, in effect, conceded by counsel for appellant, who insist that appellee is barred from his common law

action under the law of assumed risk, for the reason that all conditions, and whatever dangers there were, were open and obvious to him and therefore were assumed by him. The same is true as regards appellant, which was represented by its superintendent, who was present overseeing and directing the work. What was notice to one would under like conditions be equally notice to the other. No discrimination can be made in this respect between the employer and the employee and preserve that equality of right which it is the policy of the law to preserve and maintain. The object to be attained by this statute was to prevent injuries to persons employed in this dangerous and extra-hazardous occupation, so that negligence on their part in the manner of doing their work might not prove fatal. The language of the statute is, that the scaffold *"shall* be erected and constructed in a safe, suitable and proper manner, and *shall* be so erected and constructed, placed and operated, as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon." No attempt is made to define what shall be considered or shall constitute a safe, suitable and proper scaffold, which, from the very nature of things, could not well be done, for what might be a safe, suitable and proper scaffold for one kind of work under one set of conditions or circumstances would be wholly inadequate, insufficient and unsafe for doing another kind of work under other conditions or circumstances and at a different height from the ground. Consequently the legislature has not attempted to define what shall constitute a safe, suitable and proper scaffold but has cast the burden of constructing safe, suitable and proper scaffolds upon the employer, and he cannot escape liability for injuries sustained by reason of his failing to furnish such scaffolds by pleading ignorance of their dangerous condition when the conditions are known to him. The language of the statute is mandatory and imperative that the scaffold shall be so constructed as to be safe and afford

adequate protection to the persons working thereon, and the employer cannot escape liability for a willful violation- of the statute where he constructs an insufficient, unsafe and dangerous scaffold, even though he may have believed the scaffold constructed by him safe and the conditions under which it was being used not dangerous.

The provisions of the statute we are considering are in the same language as section 33 of the Mining act, in force at the time this statute was passed. In the recent case of *Piazzi* v. *Kerens-Donnewald Coal Co. supra,* this court held that the mine owner or operator is liable for a willful violation of the mining statute even though he had the place examined by a mine examiner, who in good faith believed that the place was not dangerous. It was there said: "If the clod in the roof constituted a dangerous condition it was the duty of the mine examiner to discover that fact and mark the place. It was held in *Aetitus* v. *Spring Valley Coal Co.* 246 Ill. 32, that if conditions in the mine are in fact dangerous, the owner or operator cannot excuse himself from liability for a willful violation of the Mines and Mining act if he fails to, cause the places where the dangerous conditions exist to be marked, even though the mine examiner may have examined those places and in good faith believed that the conditions were not dangerous." And in *Aetitus* v. *Spring Valley Coal Co. supra,* on page 39 it is said: "When the mine owner or operator is advised of the conditions in the mine, he must place in the mine, if it is dangerous, the statutory marks, and if he fails to do so he acts at his peril, and he cannot excuse himself because he or his examiner or manager may think the mine safe. To so hold would be to permit the mine owner or operator, or his examiner or manager, to usurp the functions of the court and jury, and to pass upon a question which, in every case like this, is a matter of proof and is to be determined as a fact by the jury.—*Catlett* v. *Young,* 143 Ill. 74; *Odin Coal Co.* v. *Denman,* 185 id. 413; *Davis*

v. *Illinois Collieries Co.* 232 id. 284; *Eldorado Coal and Coke Co.* v. *Swan,* 227 id. 586; *Mertens* v. *Southern Coal and Mining Co.* 235 id. 540; *Olson* v. *Kelly Coal Co.* 236 id. 502; *McCarthy* v. *Spring Valley Coal Co.* 232 id. 473."

What was said in the cases cited is equally true and applicable to the situation in the case at bar, and for the reasons there given the same rule of construction should be adopted in construing the provisions of the statute here under consideration. The statute not defining what shall constitute a safe, suitable and proper scaffold, the question then must necessarily be left to the jury for determination as one of fact. In this case the conditions were all before the jury, and this question was submitted to them under instructions much more favorable to appellant than was its right, as the jury were told that appellee could not recover from appellant, under the law, unless he had proven by the evidence that appellant willfully failed to comply with said law and construct a safe, suitable and proper scaffold, proper and adequate to protect the lives and limbs of the persons employed thereon, and that by a willful violation of the statute is meant a reckless disregard of the provisions of the statute. The word "willfully" is synonymous with "knowingly," and to constitute a willful violation of the statute it is not necessary that there should have been "a reckless disregard" of its provisions. The employer is liable not only when the dangerous conditions are known to him, but also when by the exercise of reasonable care the existence of such dangerous conditions could have been discovered and become known to him. *Peebles* v. *O'Gara Coal Co.* 239 Ill. 370.

The jury by their verdict have found the issues on the facts against appellant and the Appellate Court has approved the judgment of the trial court entered on this verdict. Under the law this question of fact is conclusively settled for this court by the judgment of the Appellate Court affirming the judgment of the trial court. (*Kelly-*

*ville Coal Co.* v. *Strine,* 217 Ill. 516; *Illinois Steel Co.* v. *Olste,* 214 id. 181.) In *Tomasi* v. *Donk Bros. Coal Co.* 257 Ill. 70, it is said: "Conceding that defendant in error wrongfully and unlawfully fired his shot, whether such act on his part was the proximate cause of the injury, or whether it resulted from plaintiff in error's violation of the statute, as charged in the declaration, were questions of fact to be determined by the jury. (*Henrietta Coal Co.* v. *Martin,* 221 Ill. 460; *Mertens* v. *Southern Coal Co.* 235 id. 540.) * * * The jury has found that the injury complained of resulted from the willful violation of the statute, and that finding has been approved by the Appellate Court, and we have no power, under the law, to review that question."

Appellant also insists that the evidence fails to show that the violation of the provisions of the statute was the proximate cause of appellee's injury. What is the proximate cause of an injury is ordinarily a question of fact for the jury, to be determined from a consideration of all of the attending facts and circumstances. It only becomes a question of law when the facts are not only not disputed, but are also such that there can be no difference in the judgment of reasonable men in the inference to be drawn therefrom. (*Nall* v. *Taylor,* 247 Ill. 580; *Illinois Central Railroad Co.* v. *Siler,* 229 id. 390; *Waschow* v. *Kelly Coal Co.* 245 id. 516.) The evidence in this case shows that the runway was permitted to become so piled with brick that there was only a space about five feet in width at the place where appellee was required to pass his co-laborers, and that when the empty wheelbarrow was placed as close to the pile of brick as it could be placed there was less than three inches in space between the trays of the wheelbarrows for passing and the wheeler was but about fifteen inches from the unguarded edge of the platform or runway. Under these facts and circumstances as proven it might fairly and reasonably have been found by the jury that the scaf-

fold or runway on which appellee was required to work was permitted to become unsafe and of insufficient width to afford adequate protection to the men at work thereon, and that such condition was the proximate cause of appellee's injury.

On the evidence in this case the Appellate Court did not err in refusing to reverse the judgment of the trial court.

Finding no reversible error in the record the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*