(No. 42736.—

WAYNE CRAFTON, Appellee, *vs.* LESTER B. KNIGHT & ASSOCIATES, INCORPORATED, *et al.,* Appellants.

*Opinion filed Oct. 7, 1970.—Rehearing denied Dec. 3, 1970.*

ROBERT C. STRODEL, Assoc., of Peoria, for appellants.

JAMES L. HAFELE, of HAFELE & McDADE, and LESTER BERRY SMITH, of SMITH & WHITNEY, both of Peoria, for appellee.

Mr. JUSTICE BURT delivered the opinion of the court:

The plaintiff, Wayne Crafton, in his complaint sought damages for alleged violation of the Structural Work Act (Ill. Rev. Stat. 1967, ch. 48, par. 60 *et seq.*) against the defendants, Caterpillar Tractor Company, Lester B. Knight & Associates, Mississippi Valley Structural Steel Company and Joseph T. Ryerson & Son. Each of the defendants, in addition to filing answers, filed a counterclaim or a third-party action seeking indemnity against John F. Beasley Construction Company, the employer of the plaintiff. Beasley accepted the defense of the principal action and as a result the counterclaims and third party actions were dismissed. A verdict in favor of the plaintiff in the amount of $20,000 was rendered from which judgment the defendants appealed to the Appellate Court for the Third District, which affirmed. 114 Ill. App. 2d 52.

The defendants' position is that the trial court erred in failing to direct a verdict in their favor and in failing to grant their motion for judgment notwithstanding the verdict, for the reason that the Structural Work Act as a matter of law was inapplicable to the facts of this case.

The Caterpillar Tractor Company was the owner of certain land near Peoria, and entered into certain agreements with the other defendants as prime contractors for the construction of a building on this land. In April of 1966, the plaintiff, Wayne Crafton, an iron worker, was employed by Beasley, a subcontractor and was working at the site of construction.

At the time of the incident in question, the plaintiff was working with two other iron workers and was moving structural steel from a railsiding to the site of the actual construction. They were using an Allis-Chalmers tractor

equipped with a 30-foot side-boom hoist, which was being operated by an operating engineer. The tractor was used exclusively to haul structural steel from the railsiding and storage area to the site of the actual construction of the building several hundred yards away. The plaintiff and the fellow iron workers tied the structural steel into bundles and fastened it to the cable hoist which was attached to the Allis-Chalmers tractor. The tractor would then lift the bundles off the ground nine inches to two feet and carry the steel to the building site where the iron workers would unfasten the iron, and other hoists took over the job of lifting the steel into position.

The area between the storage yard and the place of erection was covered with deep mud ranging in depth from six inches to two feet. The iron workers rode the Allis-Chalmers tractor either by sitting on the seat with the operator, on the fuel tank behind the seat, or on a specially erected platform on the hoist used for the purpose of transporting people, which had been constructed by the direction of Beasley Company. Plaintiff testified that on April 28, 1966, as he was getting onto the back of the tractor which he always rode, he had one foot on the housing of the tractor and one foot on the tractor, and when he put his right foot on the track which was all muddy and slick, the operator started backing off before he got up on the tank beside him, and he fell to the ground. He tried to catch himself on the fuel tank and tore the ligaments or tendons in his right shoulder. Before the tractor was backed up, his right foot was on the right hand track, and his left foot was on the housing of the power takeoff. There was mud on the housing.

There was evidence that the foreman employed by Beasley and who acted as a representative for the defendant, Mississippi Valley Structural Steel Company, ordered the men to ride the tractor through the mud. There was also evidence that Beasley was specifically informed by an em-

ployee of one of the prime contractors, Knight, that riding the tractor was against the safety rules and his employees should not be permitted to ride the tractor.

The defendants argue that the Structural Work Act (Ill. Rev. Stat. 1967, ch. 48, pars. 60 through 69), does not apply to the facts in question and particularly, that the facts do not come within the terms of section 1 (par. 60), which provides: "That all scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon."

This court made it clear in *Gannon* v. *Chicago, Milwaukee, St. Paul and Pacific Railway Co.,* 22 Ill.2d 305, that a liberal construction of the Structural Work Act is necessary to carry out the clear purpose of the legislature. Further, the statutory purpose as stated in the early case of *Schultz* v. *Henry Ericsson Co.,* 264 Ill. 156, 164, was "to prevent injuries to persons employed in this dangerous and extrahazardous occupation, so that negligence on their part in the manner of doing their work might not prove fatal." However, despite the fact that a liberal construction is within the clear purpose of the legislature, this court does not feel that the facts of this case fall within the Structural Work Act. The Structural Work Act has never been interpreted nor is it the opinion of this court that the legislature intended the statute to cover any and all construction activities whatsoever. We feel in the case at hand that the hoist attached to the Allis-Chalmers tractor had nothing to

do with the injury caused to the plaintiff. The lurching of the tractor caused the injury.

There is no question that, at the time of the injury, the plaintiff was not riding on the actual hoist attached to the tractor, so any discussion regarding this particular hoist as the proximate cause of the plaintiff's injury is without basis in the record. If we interpret the Structural Work Act so that the facts of the instant case are within the Act, such an interpretation would necessarily cover the plaintiff riding on the back of the Allis-Chalmers tractor with a trailer attached to this tractor hauling the structural steel to the construction site rather than with the use of a side boom hoist. We further believe that such an interpretation, bringing the instant facts within the Structural Work Act, might very well cover the driving of a pickup truck by an employee of the defendant some considerable distance from the actual work site in an attempt to gather materials and bring them back to the construction site itself. Such an interpretation cannot be reached without changing the plain meaning of the Structural Work Act.

For the instant case to fall within the Structural Work Act it must come within the statutory provision that "all scaffolds, hoists, cranes, stays, ladders, supports or other mechanical contrivances erected or constructed by any person, firm, or corporation in this State for the use in the erection * * * of any * * * structure, shall be erected * * * in a safe, suitable and proper manner." There is no question that the Allis-Chalmers tractor which lurched and caused the plaintiff's injury, is neither a "scaffold, hoist, crane, stay, ladder, or support." Not being such, we must determine whether or not the Allis-Chalmers tractor would fall within the term "other mechanical contrivances" as set out in the Act. It is clear from the plain wording of the statute that the Allis-Chalmers tractor simply does no fall within the statute, nor was it the intent of the legislature to cover such a situation. It is difficult for

us to understand how, from the plain wording of the statute, the Allis-Chalmers tractor was "erected or constructed by any person * * * for the use in the erection, repairing, alteration, removal or painting of any * * * structure." Even if we would hold that the tractor would qualify within the term "other mechanical contrivances" within the Act, we cannot say that the lurching of this particular tractor, whether it had a side hoist attached to it or not or whether a trailer was hooked on behind it, was the proximate cause of the plaintiff's injury.

It is our judgment that the trial court should have directed the verdict in favor of the defendants, since under the facts the Structural Work Act does not apply as a matter of law.

*Judgment reversed.*