WILLIAM H. KENWORTHY, Plaintiff-Appellant, *v.* JOHN A. YOUNG, Defendant-Appellee.

Fourth District   No. 15120

Opinion filed March 29, 1979.

Richard F. Record, Jr., and Gregory C. Ray, both of Craig & Craig, of Mattoon, for appellant.

Randolph M. Rich, of Meehling & Rich, of Marshall, for appellee.

Mr. PRESIDING JUSTICE REARDON delivered the opinion of the court:

Plaintiff appeals the dismissal with prejudice on June 23, 1978, of count I of his complaint seeking damages for personal injuries allegedly

caused by the defendant in violation of the Structural Work Act (Ill. Rev. Stat. 1975, ch. 48, par. 60 *et seq.*).

Count I of plaintiff's complaint alleged that on September 27, 1977, defendant owned farm land in Cumberland County, Illinois. On that date the plaintiff was employed by the defendant as a general farmhand for general labor work and was assisting the defendant in harvesting soybeans from nearby fields. Plaintiff was hauling beans in farm wagons from the combine being operated by defendant to two storage bins located in a nearby barn.

Defendant provided the plaintiff with a grain auger which was located in the area of the storage bins for use in unloading the grain from the farm wagons and transferring it to the storage bins. After plaintiff, at the direction of the defendant, had loaded and filled one of the two storage bins, plaintiff decided to move the grain auger from the full south storage bin to the empty north storage bin. Because there was no hitch on the auger which could be used for pulling it to a new area, defendant instructed plaintiff to use a chain attached to the drawbar of the tractor the plaintiff was operating, to pull and push the auger to an appropriate position. Before plaintiff was able to begin that operation, however, the auger tipped over so that the end normally touching the ground was high in the air, and the end normally from which the beans would be expelled was resting on the ground.

The auger was supported by means of braces and legs. At the top of the leg extending towards the feeder or front end of the auger was a hand crank which would change and reduce the angle of the leg on the opposite end of the auger relative to the base of the auger so as to lower the auger towards the ground. Plaintiff ascended the leg in order to get access to the hand crank and then turned the hand crank to lower the auger. The auger collapsed suddenly and sharply approximately 4 to 6 inches, whereupon the plaintiff immediately terminated movement of the hand crank. Before the plaintiff was able to undertake any further activity, the entire structure collapsed, throwing him to the ground.

As a result of the fall, plaintiff alleged that he sustained very serious permanent injuries to his left arm, hand, and wrist, and that he also lost wages. Plaintiff further alleged that defendant owned the premises in question and the auger from which plaintiff fell. Plaintiff also alleged that he was working under the supervision and control of the defendant.

The issue raised on appeal is whether count I of plaintiff's complaint stated a cause of action under the Structural Work Act.

■■ At the outset, we note that a motion to strike or dismiss a complaint admits facts well pleaded for the purpose only of determining whether, as a matter of law, those facts pleaded state a claim upon which relief can be granted. The standard on appeal is similarly whether the complaint

alleged facts which sufficiently state a cause of action. *Carlinville National Bank v. Rhoads* (1978), 63 Ill. App. 3d 502, 503, 380 N.E.2d 63, 64-65.

Section 1 of the Structural Work Act provides in part:

"[A]ll scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon." (Ill. Rev. Stat. 1975, ch. 48, par. 60.)

Section 9 of the Act provides in part:

"Any owner, contractor, sub-contractor, foreman or other person having charge of the erection, construction, repairing, alteration, removal or painting of any building, bridge, viaduct or other structure within the provisions of this act, shall comply with all the terms thereof, * * *.

* * *

For any injury to person or property, occasioned by any wilful violations of this act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby; * * *." Ill. Rev. Stat. 1975, ch. 48, par. 69.

■ The object of the Structural Work Act is to protect work activities of a particularly hazardous nature and is designed to lessen the extent of the danger. (*Halberstadt v. Harris Trust & Savings Bank* (1973), 55 Ill. 2d 121, 127, 302 N.E.2d 64.) Generally, the Act is to be liberally construed to carry out this purpose. *McNellis v. Combustion Engineering, Inc.* (1974), 58 Ill. 2d 146, 151, 317 N.E.2d 573.

Plaintiff contends that after completing the hand crank movement, the braces or supports of the auger collapsed and were the immediate cause of his fall and injuries. Since the defendant had intended that plaintiff use the leg braces or supports as a scaffold for the purpose of lowering one end of the auger, the braces or supports constituted a scaffold within the meaning of the Act. Plaintiff concedes that the auger itself is not a house, building, bridge, or viaduct as specified in the Act, but argues that the auger falls within the meaning of "other structure."

Plaintiff directs our attention to the recent case of *Acquaviva v. Sears, Roebuck & Co.* (1979), 68 Ill. App. 3d 588, 386 N.E.2d 381. In *Acquaviva*, the complaint alleged that the plaintiff was employed as the operator of a

mortar mixing machine at a building construction site. In order to reach the release lever on the mixer, plaintiff alleged that he was required to climb on the top of an empty wheelbarrow and place one foot on the mixer. On one occasion while plaintiff stood upon the wheelbarrow and the mixer and pulled the lever, he lost his balance and fell backwards, sustaining serious injuries. The trial court dismissed plaintiff's complaint on the ground that the mortar mixing machine, a movable piece of equipment, was not covered by the Structural Work Act. The appellate court reversed, finding that plaintiff's use of the machine as a necessary support in the performance of his duties on the construction site was sufficient to state a cause of action under the statute.

■■ ■ We do not find the holding in *Acquaviva* persuasive. While we would agree that our inquiry should not be limited to the identity of the object being used as a support or a scaffold, but rather how it was being utilized at the time of the injury, the opinion in *Acquaviva* overlooks the clear requirement of the statute that the support or scaffold be utilized for the "erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure." No such allegations were present in *Acquaviva*. We do not believe the statute was intended to include every injury sustained in operating machinery, particularly in the absence of any allegation that the machine was used as a support in order to stand or work upon a separate building or structure as enumerated in the Act.

Plaintiff relies upon *Warren v. Meeker* (1973), 55 Ill. 2d 108, 302 N.E.2d 54, in support of his contention that the grain auger constituted a structure within the meaning of section 1 of the Act. In *Warren*, the complaint, which was dismissed by the trial court, alleged that the plaintiff ascended a ladder permanently attached to a grain silo in order to repair a part of the silo known as a "sweeping auger." A rung gave way causing the plaintiff to fall and sustain injuries. Although the grain silo was considered by a lease agreement to be personalty and removable, the supreme court decided that the general characteristics of the grain silo were sufficiently akin to the structure specifically identified in section 1 so that the Act applied. While we note the similarity of the stationary grain silo in *Warren* to a building or the other structures enumerated in section 1, we fail to perceive any similarity between those enumerated structures and the grain auger in the instant case. Furthermore, the allegedly defective ladder in *Warren* had been permanently attached to the silo for the purpose of aiding maintenance. Here, the leg braces or struts of the auger were not separately designed as a ladder to be used for any maintenance purposes, but were basic components of the auger.

In *Crafton v. Lester B. Knight & Associates, Inc.* (1970), 46 Ill. 2d 533, 263 N.E.2d 817, the plaintiff and two other iron workers were using an Allis-Chalmers tractor to haul structural steel from a railsiding to a

construction site. At one point while plaintiff was climbing the tractor for the ride between sites, the operator of the tractor suddenly placed the tractor in reverse, causing the plaintiff to fall and injure his shoulder. In holding the Structural Work Act inapplicable, the supreme court stated:

"There is no question that the Allis-Chalmers tractor which lurched and caused the plaintiff's injury, is neither a 'scaffold, hoist, crane, stay, ladder, or support.' Not being such, we must determine whether or not the Allis-Chalmers tractor would fall within the term 'other mechanical contrivances' as set out in the Act. It is clear from the plain wording of the statute that the Allis-Chalmers tractor simply does not fall within the statute, nor was it the intent of the legislature to cover such a situation." (46 Ill. 2d 533, 537, 263 N.E.2d 817, 819.)

The court in *Crafton* further stated: "It is difficult for us to understand how, from the plain wording of the statute, the Allis-Chalmers tractor was 'erected or constructed by any person * * * for the use in the erection, repairing, alteration, removal or painting of any * * * structure.'" 46 Ill. 2d 533, 537-38, 263 N.E.2d 817, 819.

In *Farley v. Marion Power Shovel Co.* (1975), 60 Ill. 2d 432, 328 N.E.2d 318, the issue before the court was whether a large, self-propelled power shovel used in strip mining coal was a "structure" within section 1 of the Act. There, plaintiff sought to recover under the Act for injuries sustained when he fell from a drum of the shovel during the shovel's assembly. In finding the shovel not to be a structure within the meaning of the Act, the court relied, *inter alia*, on the doctrine of *ejusdem generis*:

" 'The doctrine of *ejusdem generis* is that where a statute or document specifically enumerates several classes of persons or things and immediately following, and classed with such enumeration, the clause embraces "other" persons or things, the word "other" will generally be read as "other such like," so that the persons or things therein comprised may be read as *ejusdem generis* "with," and not of a quality superior to or different from, those specifically enumerated.' [Citation.]" (60 Ill. 2d 432, 436, 328 N.E.2d 318, 320.)

The court in *Farley* concluded that "[t]he difficulty with plaintiff's argument is that it does not recognize what seems to us the plain purpose to limit the application of our statute to structures of the general type specified therein." 60 Ill. 2d 432, 436-37, 328 N.E.2d 318, 320.

■■ Similarly, in the instant case, we find that the leg braces or supports of the auger do not constitute a scaffold, hoist, crane, stay, ladder, support, or other mechanical contrivance within the meaning of section 1. Clearly, the purpose of the auger here was to transport beans from a wagon to a bin. It was not designed nor was it being used by the plaintiff

as a place to stand for the "erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure." At the time of plaintiff's alleged injury, he was turning a hand crank on the auger itself in an attempt to lower one end so that it could be moved. As noted earlier, we are not persuaded, under the doctrine of *ejusdem generis*, that a grain auger can reasonably be grouped with the enumerated structures in the statute under the category of "other structure." A grain auger bears no resemblance or similarity to a house, building, bridge, or viaduct. Consequently, we conclude that count I of plaintiff's complaint fails to state a cause of action under the Structural Work Act.

For the foregoing reasons, the order of the circuit court dismissing count I of the complaint is affirmed.

Affirmed.

WEBBER and TRAPP, JJ., concur.