EUGENE KENNETH RAYFIELD, Plaintiff-Appellant, *v.* HOMART DEVELOPMENT CO. *et al.*, Defendants-Appellees.—(CATERPILLAR TRACTOR CO. *et al.*, Defendants.)

First District (3rd Division)    No. 79-2074

Opinion filed August 19, 1981.—Rehearing denied October 26, 1981.

Anesi, Ozmon, Lewin & Associates, Ltd., of Chicago (Irving D. Fasman, Nat P. Ozmon, and Dario A. Garibaldi, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, Thomas M. Crisham, and Kevin R. Sido, of counsel), for appellees.

Mr. PRESIDING JUSTICE RIZZI delivered the opinion of the court:

This is a Structural Work Act case (Ill. Rev. Stat. 1979, ch. 48, par. 60 *et seq.*) in which plaintiff, Eugene Kenneth Rayfield, was injured while operating a Traxcavator at a construction site owned by defendants Homart Development Co. and Broadway-Hale Properties, Inc. The trial court entered summary judgment in favor of defendants. We affirm.

A Traxcavator is basically a tractor with a front bucket that is used to scoop and lift material such as gravel or stone. The bucket tilts and is lifted by means of hydraulic arms controlled by the operator. The operator sits on an unenclosed cushioned seat. At the time of the occurrence, the bucket was elevated and loaded with one-inch stone. Plaintiff was simultaneously raising the bucket and moving the machine backward up a slope. The machine tipped forward, thrusting plaintiff off the machine in a forward direction and onto the ground.

Plaintiff brought a multi-count suit against several defendants, including a product liability count against the manufacturer of the Traxcavator.[1] The count against defendants Homart Development Co. and Broadway-Hale Properties, Inc., is based solely on the Structural Work Act. Plaintiff's theory is that these defendants are liable under the Act because the Traxcavator "had no seat belt and no other type of restraining device to hold the plaintiff in place on top of the machine, in the event the machine tipped or lurched."

The parties first argue as to whether a Traxcavator that is being used to backfill at a construction site is a mechanical contrivance within the meaning of the Structural Work Act. We agree with plaintiff that a reasonable interpretation of the Act requires the conclusion that a Traxcavator used in such a manner is a mechanical contrivance within the meaning of the Act. However, we disagree with plaintiff on the more significant issue of whether the Act is intended to impose liability for the alleged failure of a Traxcavator to have a seat belt or other type of restraining device.

---

[1] At the time of the appeal, the suit remained pending against the other defendants. The other defendants are not involved in the appeal.

In order to determine the intent of a statute, we must not only look to its language, but we must also look to the evil to be remedied and the object to be attained. In determining the evil to be remedied and the object to be attained by the Structural Work Act, we must look to its history, including the legal climate that existed when it was enacted.

When the Structural Work Act was enacted in 1907, it was an enlightened and needed piece of legislation. Illinois did not yet have a workmen's compensation act. Working conditions in the construction trades were extrahazardous, and injured workers' claims for compensation were being defeated because of the doctrines of contributory negligence and assumption of risk. The purpose of the Structural Work Act "was to prevent injuries to persons employed in this dangerous and extrahazardous occupation, so that negligence on their part in the manner of doing their work might not prove fatal." (*Schultz v. Henry Ericsson Co.* (1914), 264 Ill. 156, 164, 106 N.E. 236, 239.) As a result, the doctrines of contributory negligence and assumption of risk were held not to be applicable to the Act. (*Schultz v. Henry Ericsson Co.* (1913), 182 Ill. App. 487, 493, *aff'd* (1914), 264 Ill. 156, 106 N.E. 236.) With these legal bars removed, suits under the Act were generally brought by injured employees against their own employers. *E.g., Schultz.*

In 1911, four years after the enactment of the Structural Work Act, the Illinois Workmen's Compensation Act was enacted. It also afforded compensation to injured employees without regard to contributory negligence or assumption of risk. However, since the Workmen's Compensation Act limited actions against employers to the remedies afforded by the Workmen's Compensation Act, and since section 29 of the Workmen's Compensation Act barred actions by employees against third-party tortfeasors who were also covered under the Workmen's Compensation Act, the Structural Work Act became virtually a dormant piece of legislation. Then, in 1952, section 29 of the Workmen's Compensation Act was held unconstitutional, and the worker's right to sue third-party tortfeasors was established. (*Grasse v. Dealer's Transport Co.* (1952), 412 Ill. 179, 200, 106 N.E.2d 124, 135.) This, of course, resulted in a proliferation of Structural Work Act suits.

This background of the Structural Work Act demonstrates that the Act is intended to afford injured workers in the construction trades a remedy where none exists, rather than to provide an additional remedy where other reasonable and satisfactory remedies are available. For this reason, we believe the Structural Work Act should be liberally interpreted where the need for a liberal interpretation reasonably exists to protect and afford relief to injured workers. However, the Act should not be interpreted so that it is extended unnecessarily to cover neoteric theories of liability where the existing workmen's compensation and tort remedies protect and give reasonable and satisfactory relief to construction

workers. This is consistent with the view that although the Structural Work Act is to be liberally construed to effectuate its purpose, it should not be interpreted to compel coverage of every construction work injury. (*Crafton v. Lester B. Knight & Associates, Inc.* (1970), 46 Ill. 2d 533, 536, 263 N.E.2d 817, 819) or every injury sustained in the operation of machinery at construction sites (*Kenworthy v. Young* (1979), 70 Ill. App. 3d 144, 147, 388 N.E.2d 217, 220). It also comports with the conclusion of the court in *Matthews v. Commonwealth Edison Co.* (1980), 90 Ill. App. 3d 1024, 1028, 414 N.E.2d 147, 150. There, the court stated:

> "The Act should be generously interpreted to protect those who are covered by it. It should not be extended by unnatural interpretations, especially where the normal worker's compensation and tort remedies remain to give relief to an injured worker."

With this perspective, we have examined the Structural Work Act cases cited by the respective parties. None of the cases imposes liability for the failure of a mechanical contrivance to have a seat belt or a like device. Rather, the cases involving mechanical contrivances in which liability has been upheld include cases in which injuries to third persons occurred because of the unsafe operation of the mechanical contrivance as well as cases in which injuries occurred due to a functional or operational defect of the mechanical contrivance. We believe it would be an unnatural interpretation of the Act to extend its coverage further to include alleged defects which do not involve a functional or operational defect of a mechanical contrivance, such as the absence of seat belts or like devices. Plainly, the object to be attained by the Act would not be effectuated by interpreting the Act so that it would impose liability for such defects upon those persons named in the Act, where the normal workmen's compensation and tort remedies remain to give relief to an injured worker. (See *Matthews*, 90 Ill. App. 3d 1024, 1028, 414 N.E.2d 147, 150.) Therefore, we conclude that the Act is not intended to impose liability for the alleged failure of a Traxcavator to have a seat belt or other type of restraining device.

Inasmuch as the material facts in this case are not in dispute, and the controversy is over the proper construction of the Structural Work Act and whether the facts sustain a cause of action under the Act, the case presents a question of law. Thus, summary judgment was an available procedure. Accordingly, we conclude that the trial court properly entered summary judgment in favor of defendants Homart Development Co. and Broadway-Hale Properties, Inc. The judgment is affirmed.

Affirmed.

McNAMARA and McGILLICUDDY, JJ., concur.