KENNETH COOLEY, Plaintiff-Appellee, *v.* CENTRAL ILLINOIS PUBLIC SERVICE COMPANY, Defendant-Appellant.—(Sargent & Lundy, Inc., Defendant.)

Fifth District   No. 81—344

Opinion filed October 4, 1982.—Rehearing denied November 18, 1982.

HARRISON, J., dissenting.

Hoagland, Maucker, Bernard and Almeter, of Alton (Robert B. Maucker and Donald Smith, of counsel), for appellant.

Law Offices of William W. Schooley, of Granite City (William W. Schooley and John H. Hustava, of counsel), for appellee.

PRESIDING JUSTICE KARNS delivered the opinion of the court:

Plaintiff, Kenneth Cooley, recovered a judgment for damages for personal injuries received in a construction project accident that occurred because of an alleged violation of the Illinois Structural Work Act (Ill. Rev. Stat. 1977, ch. 48, par. 60) after a jury trial in the circuit court of Madison County, against Central Illinois Public Service Company. The jury returned a verdict for defendant on the negligence counts of the complaint. The trial court denied defendant's motion for directed verdict and its post-trial motions in arrest of judgment and for judgment notwithstanding the verdict.

On appeal, defendant contends that judgment should be entered in its favor as plaintiff's complaint neither stated nor did the evidence at trial prove a cause of action arising under the Structural Work Act. Defendant further contends that there was no proof that defendant wilfully violated the Act.

Plaintiff was employed as an operating engineer by a joint venture known as Newton Associates, the general contractor for the construction of a power plant for defendant at Newton, Illinois. His particular employment was to operate a crane known as a "creter" crane, derived from the word concrete, a large vehicle weighing approximately 100,000 pounds, which consists of a long-boom crane attached to conveyor belts used to transport concrete to various eleva-

tions at a jobsite by the raising and lowering of the conveyors by use of the crane boom. The conveyor belt is activated by motors powered by a generator located at the rear of the crane. Power to the generator is furnished by a diesel engine located behind the cab. All controls, including the generator controls, are located in the cab of the crane which is five feet off the ground.

Plaintiff was injured on Monday, May 8, 1978. On the Friday prior to this date, while the crane was in use pouring concrete at the jobsite, the generator which powered the conveyor belts quit operating. Plaintiff was directed to move the crane to a road away from the construction area so the generator could be repaired by mechanics employed by the general contractor. Plaintiff did not work Saturday and Sunday. When he returned to work at 8 a.m. on Monday, it had been raining, as it had been off and on for the prior week. At 8:20 a.m. it stopped raining and the men were instructed to report to work. Plaintiff went to the site where he had parked the crane on Friday. A mechanic then began to remove the generator from the crane. Plaintiff proceeded to the cab, intending to enter the cab and, apparently, start the engine. He was unable, however, to state any reason for so doing as the crane was temporarily out of service. The crane had no ladder, steps or grab-bars as a means of climbing into the cab and plaintiff proceeded, as he had always done for approximately four years, to climb into the cab by first stepping up onto the steering bar with his left foot, then placing his right foot onto the axle, then his left foot. As he swung his right foot over to enter the open door of the cab, his left foot slipped from the axle and he fell to the ground injuring his back. His feet were muddy from the mud on the roadway, a temporary construction road, which had been built by the general contractor. It was rocked but nonetheless would become muddy after rain, causing the rubber tires of the crane to sink into the roadway. The road was sometimes used by operating personnel of defendant.

Section 1 of the Structural Work Act (Ill. Rev. Stat. 1977, ch. 48, par. 60) as here pertinent provides:

"[A]ll *** cranes *** or other mechanical contrivances erected or constructed by any person *** *for use in the erection, repairing, alteration *** of any *** structure,* shall be erected or constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon." (Empha-

sis added.)

Defendant's first contention is that there were no allegations in plaintiff's second amended complaint or proof at trial that at the time of the accident the crane was being used in the erection of any structure in connection with the construction of the power plant as it was inoperative, out of service, and was parked on a construction road undergoing repairs; therefore, the crane was not being used in construction at the time of the accident. The allegations of the complaint are that defendant wilfully violated the Act by failing to require placement of rock on the construction road; by permitting operation of the crane on the muddy construction road under weather conditions that were unsafe; by permitting the operation of the crane without adequate steps and grab-bars; and by failing to require that the crane be repaired on a hard surface area. Defendant does not deny that it was in charge of the work being performed.

Plaintiff argues that repair of the equipment is "operation" of the crane as it is an integral part of the entire operation of erecting a power plant and that the construction contract between the defendant owner and the general contractor contemplated that equipment would be required to be repaired as the defendant agreed to reimburse the general contractor for the cost of repairs to equipment under the "cost-plus" contract between the parties. This theory derives from *McNellis v. Combustion Engineering, Inc.* (1973), 13 Ill. App. 3d 733, 301 N.E.2d 96; *aff'd* (1974), 58 Ill. 2d 146, 317 N.E.2d 573.

In *McNellis*, a workman received fatal injuries while removing large, 20,000 pound pedestals from a railroad car located one-half mile from the construction site of Commonwealth Edison's power-generating plant. The pedestals were eventually to be installed in the plant as part of the steam generating units. Cranes were available to assist in unloading the pedestals but were not used. The workman was assisting in cutting loose the metal plates that secured the pedestals to the gondola car when one of the pedestals fell, pinning him to the car. The cranes could have been used to hold the pedestals in place.

In response to defendant's argument that unloading of equipment was not a structural work activity, the appellate court reasoned that the agreements between the owner, Commonwealth Edison, and the general contractor, who subcontracted the unloading of the pedestals to the deceased workman's employer, contemplated that unloading was a part of erecting the generators within the plant and that considering the size of the construction project, unloading of equipment some distance from the plant was required. The appellate court concluded that "the unloading in question was an integral part of the en-

tire operation of erecting the generating units." (13 Ill. App. 3d 733, 741, 301 N.E.2d 96, 102.) The court reasoned that the failure of Commonwealth Edison to require the use of cranes was, therefore, a violation of the Act just as the failure to require safe scaffolding would be actionable under the Act. (See *Louis v. Barenfanger* (1968), 39 Ill. 2d 445, 236 N.E.2d 724.) The supreme court agreed with the reasoning of the appellate court and stated, "under the terms of this contract and facts of this case the unloading may fairly be viewed as an integral part of the erection operation." (*McNellis v. Combustion Engineering, Inc.* (1973), 58 Ill. 2d 146, 151, 317 N.E.2d 573, 576.) Plaintiff reasons that repair of equipment, as unloading of equipment, was an integral part of the construction of this power plant, and was anticipated and provided for under the contract between the owner and general contractor. Therefore, the Structural Work Act was applicable to the activity in which plaintiff was engaged at the time of his injury.

Defendant argues that the reasoning of *Crafton v. Lester B. Knight & Associates, Inc.* (1970), 46 Ill. 2d 533, 263 N.E.2d 817, should control our decision in this case. In *Crafton*, plaintiff, an ironworker, was engaged in moving structural steel from a rail siding to the site of a building construction project being done for Caterpillar Tractor Company. Structural steel was fastened to a cable hoist, part of a tractor equipped with a 30-foot, side-boom hoist. The structural steel was tied into bundles and fastened to the cable hoist. The bundles were then lifted off the ground and transported by the tractor to the building site where plaintiff would unfasten the steel, which would then be lifted by other hoists onto the structure being erected. At the time of his injury, plaintiff was in the process of getting onto the tractor to ride the distance from the rail siding to the building site, an area covered with deep mud. Plaintiff slipped from the track of the tractor, which was muddy and slick, as the operator started the tractor in motion and fell, sustaining injuries. The court concluded that notwithstanding a liberal construction of the Structural Work Act is mandated, the Act does not apply to any and all construction activities and that the hoist attached to the tractor had nothing to do with plaintiff's injury, which was caused by the lurching of the tractor as plaintiff was attempting to board it as a means of transportation. The court stated:

> "It is difficult for us to understand how, from the plain wording of the statute, the \*\*\* tractor was 'erected or constructed \*\*\* for use in erection, repairing, alteration, removal or painting of any \*\*\* structure'." 46 Ill. 2d 533, 537-38, 263 N.E.2d 817, 819.

The appellate court opinion in *McNellis* distinguished *Crafton* on the basis that McNellis received his injury because of the failure to employ cranes in the unloading process, stating that the tractor from which plaintiff in *Crafton* fell was used solely for transportation and had no connection with the cable hoist. Plaintiff in *Crafton* was injured because of the lurching of the tractor, not because of the use or failure to use the cable hoist. The supreme court opinion in *McNellis* considered the two cases dissimilar and adequately distinguished in the appellate court opinion.

Plaintiff argues that here, unlike *Crafton*, the "creter" crane was used in the construction of defendant's power plant and was only temporarily out of service for repairs. Admittedly, the crane was not being used at all at the time of plaintiff's injuries.

In *McNellis*, the deceased workman was engaged in an extrahazardous activity which was an integral part of the steel erection operation. This cannot be said of plaintiff here. Plaintiff was required to be present at the crane under union rules while the mechanic was repairing the crane and to assist if requested. A fair reading of the record discloses no evidence that any assistance was required by the mechanic, who could not state why plaintiff would enter the cab of the crane the morning of the accident. The plaintiff was not assisting the mechanic in removing the generator from the crane, nor was he requested to do so. The plaintiff was not engaged in repairing the generator. We do not believe that the activity of repairing this crane was a use in the erection of the power plant within the scope of the Act. Nor do we believe that the activity in which plaintiff was engaged at the time of his accident was a Structural Work Act activity. This conclusion finds support in other cases. In *Kenworthy v. Young* (1979), 70 Ill. App. 3d 144, 388 N.E.2d 217, a grain auger collapsed throwing plaintiff to the ground. In rejecting plaintiff's claim that the supporting legs of the auger were a scaffold, the court stated that the supports were not being used to perform work upon a building or structure. In *Burkhart v. Illinois Power Co.* (1973), 9 Ill. App. 3d 139, 291 N.E.2d 673, a workman was electrocuted while trimming trees below a power line. Plaintiff argued that the power line was a "structure." The court, assuming the line to be a structure within the Act, concluded that the Act would not apply as at the time of the injury the deceased was trimming trees, not working on the power line, and thus not engaged in erection of any building or structure.

▮ The courts have always stated that the purpose of the Structural Work Act is to prevent injuries to persons employed in the dangerous and extrahazardous occupation of construction. To this end the

Act has always been given a liberal construction. The court referred to that policy in concluding that the injured workman in *McNellis* was engaged in a hazardous activity in removing the heavy, axial pedestals from the railroad car. Here, not only was the crane out of service but the activity in which plaintiff was engaged, entering the cab of the crane, was not a hazardous construction activity.

Recently, the first district decided the case of *Rayfield v. Homart Development Co.* (1981), 100 Ill. App. 3d 620, 427 N.E.2d 193. Plaintiff was the operator of a traxcavator, a tractor with a front bucket, which the court found was being used as a "mechanical contrivance" within the meaning of the Act. While operating the machine on a slope, it tipped and plaintiff fell to the ground. Plaintiff claimed the failure to equip the machine with a seat belt was a violation of the Act. The court first reviewed the relationship between the Structural Work Act and the Workers' Compensation Act and then stated that "the Act should not be interpreted so that it is extended unnecessarily to cover neoteric theories of liability where the existing workmen's compensation and tort remedies protect and give reasonable and satisfactory relief to construction workers." (100 Ill. App. 3d 620, 622-23, 427 N.E.2d 193, 195.) The court concluded that the failure to have seat belts was not a violation of the Act and liability under the Act could only be imposed where "injuries to third parties occurred because of the unsafe operation of the mechanical contrivance as well as cases in which injuries occurred due to a functional or operational defect of the mechanical contrivance." (100 Ill. App. 3d 620, 623, 427 N.E.2d 193, 196.) Here, plaintiff essentially claims that the failure to have footholds and grab irons is actionable under the Act. But these deficiencies do not involve a functional or operational defect of the crane. Plaintiff was entering the cab of the crane in the same manner as he had for four years. He slipped on this occasion because of the presence of mud on his shoes, not because of a functional or operational defect of the crane. He also claims that defendant violated the Act by allowing mud to accumulate on the roadway. But this is not a functional or operational defect in the operation of the crane; it has nothing to do with the safe operation of the crane which the Act was intended to require so to prevent injuries to construction workmen in the dangerous and extrahazardous activities associated with the construction trades. (*Schultz v. Henry Ericsson Co.* (1914), 264 Ill. 156, 106 N.E. 236.) Plaintiff's injury had no connection with the potentially hazardous nature of the crane. See *Tenenbaum v. City of Chicago* (1975), 60 Ill. 2d 863, 325 N.E.2d 607.

■ It is also clear that this crane was not itself a "structure"

within the Act. In *Farley v. Marion Power Shovel Co.* (1975), 60 Ill. 2d 432, 328 N.E.2d 318, plaintiff was injured when he fell while standing on a drum in assembling a large shovel used in strip mining of coal. Distinguishing *McNellis*, which the court stated was predicated upon the contractual provisions, the court concluded that the large self-propelled shovel was not a "structure" within the meaning of the Act.

While the word "crane" does appear in the Structural Work Act as a specific contrivance covered by the Act, neither the use of the crane, which was out of service for repairs, nor the activity or "work" in which plaintiff was engaged at the time of the injury, entering the cab, can be fairly said to be structural work covered by the Act.

We need not decide defendant's second contention that there was no proof of a wilful violation of the Act.

The judgment of the circuit court of Madison County is reversed.

Reversed.

WELCH, J., concurs.

JUSTICE HARRISON, dissenting:
I respectfully dissent.

The majority predicates its decision on its belief that repairing the crane was not a construction activity covered by the Structural Work Act. (Ill. Rev. Stat. 1977, ch. 48, par. 60.) The appellee relies on *McNellis v. Combustion Engineering, Inc.* (1974), 58 Ill. 2d 146, 317 N.E.2d 573, which the majority attempts to distinguish by stating that, although the plaintiff in *McNellis* "was engaged in an extrahazardous activity which was an integral part of the steel erection operation[,] [t]his cannot be said of plaintiff here." I feel this conclusion is unsupported by the record and is belied by a more careful analysis of *McNellis*.

Under the *McNellis* ruling, the plaintiff is entitled to recover from the defendant if the repair of the crane can be characterized as an integral part of the construction of the power plant. The supreme court formulated the rule as follows:

"The determinative question is whether the unloading activities being performed by the decedent at the time of the accident constituted the 'erection of any building or other structure' within the meaning of this statutory provision.

We have held on previous occasions that the Structural Work

Act should be given a liberal construction to effectuate its purpose of protecting persons engaged in extra-hazardous occupations of *working in and about construction,* repairing, alteration, or removal or buildings, bridges, viaducts, and other structures. [Citations.] Consistent with that policy, we agree with the appellate court that *under the terms of this contract* and facts of this case the unloading may fairly be viewed as an integral part of the erection operation." (Emphasis added.) 58 Ill. 2d 146, 151.

In the case *sub judice,* the majority opinion ignores the contract between the defendant and the contractor. This contract contained a clause entitled "SCOPE OF WORK" which provided that the contractor would perform certain duties regarding "the following phases *comprising the Scope of Work*: \*\*\* b) All tool and construction equipment and all services, supplies and *maintenance thereof.*" (Emphasis added.) This provision places the repair of construction equipment squarely within the scope of the construction work. Under *McNellis,* such a contract provision is not only relevant, but taken with the facts of the case, is dispositive of the determinative question of whether the repair of the crane constitutes the "erection of any building or other structure" within the Act. (58 Ill. 2d 146, 151.) The contract language above quoted is evidence that even the defendant contemplated the repair of the crane to be an integral part of the erection process. The other facts of the case point to the same conclusion.

As the majority indicates, plaintiff was required by union rules to be present during repair. The majority's characterization of the mechanic's testimony colors this important account of events. The majority maintains that "no assistance was requested by the mechanic who could not state why plaintiff would enter the cab of the crane the morning of the accident." The crane was out of service for generator repair and the mechanic testified that all controls, including those for the generator, were inside the cab. The following colloquy ensued under direct examination: "Q. Okay. So to do *any operation at all* you would have to climb up into the cab to do the operation? A. Yeah, you would have to get into the cab on it." (Emphasis added.) The mechanic was later asked what he remembered of the accident itself and was not, as the majority recitation of facts implies, asked why plaintiff would enter the cab. In response to the actual question, the mechanic's answer was that "Well, I was on the back of it taking the generator off of it, which is a portable generator that mounts on the back of it. And Ken went around front, Cooley did, to get in it or something. *I don't remember what.* But anyhow I heard him yell. And

when he came back around he said he slipped and hurt his back."
(Emphasis added.) The mechanic never stated that "no assistance was
requested ***"; on the contrary, he testified on cross-examination
that the reason an operator stays at the equipment during repair is
because "a mechanic goes out by himself and they [*sic*] is so many
things that one guy can't do on a piece of equipment like that where
you need some help. So it's just set up so the operator *stays and
works* on his own equipment." (Emphasis added.) Defense counsel
then asked whether the operator actually would assist the mechanic
or if he merely stayed. The witness replied, "Yes, if you need help he
helps you." Defense counsel later inquired, "Do you remember need-
ing any assistance prior to him slipping?" The witness answered,
"Yeah, I had to have assistance getting it off because the way it bolts
on there ain't no way one guy can get to the top and the bottom of
the bolts to get them off. You've got to have assistance there." This
testimony establishes that the plaintiff was not only present during
the repair work, but actually assisted in the repair of the crane. This
fact, coupled with the contract provision discussed above, brings this
case squarely within the ruling of *McNellis*. I conclude that the plain-
tiff was injured while engaged in activity which was an integral part
of the construction operation and is therefore covered by the Act.

The *McNellis* rationale, however, does not constitute the only rea-
son we should affirm the circuit court. The equipment upon which
plaintiff was working was a *crane* and therefore is itself covered by
the Act. (Ill. Rev. Stat. 1977, ch. 48, par. 60.) *Farley v. Marion
Power Shovel Co.* (1975), 60 Ill. 2d 432, 328 N.E.2d 318, is distin-
guishable because that case did not involve a *crane*, and so the plain-
tiff in that case was relegated to arguing, unsuccessfully, that he was
working on a "structure." In the case at bar, plaintiff was not pro-
vided with a stepladder or other support for use in entering the ma-
chine. "The absence of a suitable support for plaintiff's use in the uti-
lization of the machine is equally actionable under the statute since it
was required to be '*** operated as to give proper and adequate pro-
tection to the life and limb of any person *** employed or engaged
thereon.' " (*Acquaviva v. Sears Roebuck & Co.* (1979), 68 Ill. App. 3d
588, 591, 386 N.E.2d 381.) In the instant case, a proper application of
the statute would place a duty upon the defendant to provide a safe
and suitable method of entry into the cab of the crane. This was not
done, and therefore I would affirm the trial court.

The majority cites *Rayfield v. Homart Development Co.* (1981),
100 Ill. App. 3d 620, 427 N.E.2d 193, for the proposition that liability
under the Act may only be imposed where "injuries to third parties

occurred because of the *unsafe operation* of the mechanical contrivance *as well as* cases in which injuries occurred due to a functional or operational defect of the mechanical contrivance." (Emphasis added.) (100 Ill. App. 3d 620, 623.) The passage in *Rayfield* on which the majority relies cites no authority at all for the rule which it purports to derive. Such a radical change in the policy of this State is best left to the supreme court and the legislature and not to the appellate court. Returning to the case at bar, the facts adduced at trial meet even the novel test set forth in *Rayfield*. Where an injury is caused because of difficulty entering the machine, an operational defect exists because the machine is impossible to operate without encountering the defect.

Finally, I would also note that *Crafton v. Lester V. Knight & Associates, Inc.* (1970), 46 Ill. 2d 533, 263 N.E.2d 817, is distinguishable because the plaintiff in the instant case was engaged in repairing the generator which provided power to move conveyors along the boom of the crane. This activity concerns the crane *qua* crane and not, as in *Crafton*, as an item of personal transportation.

For these reasons I conclude that the trial court's decision was supported by both the law and the evidence, and I therefore respectfully dissent from the majority opinion.