(No. 46164.—

DOROTHY McNELLIS, Ind. and as Adm'r, Appellee, v. COMBUSTION ENGINEERING, INC., *et al.*—(Commonwealth Edison Company, Appellant.)

*Opinion filed September 27, 1974.*

RYAN, SCHAEFER and DAVIS, JJ., dissenting.

Pretzel, Stouffer, Nolan & Rooney, of Chicago (William P. Nolan, Joseph B. Lederleitner, and James F. Carlson, of counsel), for appellant.

A. Denison Weaver, of Chicago, for appellee.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

Dorothy McNellis, individually and as administrator of the estate of her deceased husband, Charles B. McNellis, brought suit in the circuit court of Cook County against Commonwealth Edison Company and other defendants to recover damages resulting from fatal injuries sustained by her husband while unloading component parts of a steam generator from a railroad car on Commonwealth Edison's property. A jury returned a verdict in favor of plaintiff and against Commonwealth Edison in the amount of $160,000 on a count alleging violation of the Structural Work Act (Ill. Rev. Stat. 1963, ch. 48, pars. 60 through 69). The Appellate Court, First District, affirmed (13 Ill. App. 3d 733), and we granted leave to appeal.

Commonwealth Edison urges reversal of the judgments of the appellate and trial courts on the grounds that: (1) the classification of employees granted or denied benefits under the Structural Work Act is so vague and

arbitrary as to render the statute unconstitutional class legislation; (2) the verdict is against the manifest weight of the evidence, since the owner did nothing over and above engaging an independent contractor and was not "in charge of" the work which resulted in decedent's fatal injuries; (3) the unloading of equipment from the railroad car was not a structural work activity subject to the provisions of the Act; and (4) the verdict was excessive.

The opinion of the appellate court adequately treats the constitutional arguments and excessive verdict issues raised here, and we see no need for us to comment thereon. Meriting additional attention, however, are the contentions that Commonwealth Edison was not "in charge of" the work and that the unloading of the equipment was not structural work activity subject to the Act.

The facts of the case are detailed in the appellate court opinion; they will be repeated here only to the extent necessary to our limited discussion.

In 1961, Commonwealth Edison Company entered into a contract with Combustion Engineering, Inc., under which Combustion Engineering was to design, develop, fabricate, furnish and deliver two large steam-generating units for a new power plant being constructed for Commonwealth Edison on its property near Joliet, Illinois. Pursuant to an option in the contract which was exercised by Commonwealth Edison, Combustion Engineering undertook to unload, erect and finish the units, and subcontracted the unloading and erecting work to Power Systems, Inc., by whom the decedent was employed.

Commonwealth Edison provided a number of temporary railroad sidings on its property to receive materials delivered from time to time for the power plant project. This area was situated about one-half mile from the actual building site and was also used as a storage area for materials after they were unloaded from the railroad cars. When the materials were needed they would be reloaded

on railroad cars or trucks for transportation to the power station site on tracks installed by defendant.

On September 3, 1963, Charles McNellis was working as a part of a yard crew unloading two axial seal pedestals from a railroad gondola car at the unloading and storage site on Commonwealth's property. The pedestals, which had been shipped there by a division of Combustion Engineering located in Wellsville, New York, were component parts of air preheaters, which in turn were components of the steam-generating unit to be furnished by Combustion Engineering under the contract. Each of the pedestals was approximately 115 inches long and weighed about 20,000 pounds. They were secured to the railroad car by tie rods as well as by pieces of scrap steel welded to the pedestals and to the bottom and sides of the railroad car. Although there were two cranes in the vicinity which were available for use in unloading, the Power Systems crew decided to proceed without the cranes. While McNellis was assisting in cutting loose the metal plates which held the load to the car, one of the pedestals fell, pinning him to the side of the car. A crane was brought up to the site to free McNellis, but he died six weeks later from the injuries he had sustained.

While there are indications that the unloaded pieces remained in storage in the unloading area for several months before actually being transported to the power plant building for installation, there is no definite testimony as to the length of this interval other than the testimony of one of decedent's co-workers that he participated in their installation some four to six months after the accident. There was testimony that a crane should have been used to hold the pedestals in place while the tie rods and welded plates holding them to the railroad car were being cut.

In concluding that the work being done by the decedent at the time of his injury was a Structural Work Act activity, the appellate court relied upon the fact that

the written agreement between Commonwealth Edison and Combustion Engineering provided that the general task of erecting the generators within the power station would necessitate the incidental tasks of unloading and storage. The appellate court further reasoned: "It is apparent from the record that the power generating facility was a unique structure and that the circumstances of its construction, as well as the size and nature of some of its components, dictated that unloading be performed some distance from the actual building. In addition, we note that the written agreement itself defined the premises as the place where the work was to be done, including all places contiguous thereto and in the vicinity thereof where materials were stored or kept, and we believe that the record fairly demonstrates that the unloading in question was an integral part of the entire operation of erecting the generating units." (13 Ill. App. 3d at 740-741.) In her brief, plaintiff relies on the foregoing conclusions of the appellate court as well as upon a provision in the general conditions of the contract which provided in part that "all work shall comply with *** an Act of Legislature of the State of Illinois entitled [the Structural Work Act] ***."

Commonwealth Edison urges to the contrary that the unloading of a piece of equipment in a storage yard a half mile away from the site where the equipment was to be assembled at a point in time far removed from such assembly does not constitute structural work within the purview of the Structural Work Act and that the provisions of the contract do not indicate otherwise.

Section 1 of the Structural Work Act provides: "That all scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection *** of any *** building *** or other struc- ture, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and construct- ed, placed and operated as to give proper and adequate

protection to the life and limb of any person or persons employed or engaged thereon ***." The determinative question is whether the unloading activities being performed by the decedent at the time of the accident constituted the "erection of any building or other structure" within the meaning of this statutory provision.

We have held on previous occasions that the Structural Work Act should be given a liberal construction to effectuate its purpose of protecting persons engaged in extra-hazardous occupations of working in and about construction, repairing, alteration or removal of buildings, bridges, viaducts, and other structures. (*Halberstadt v. Harris Trust & Savings Bank* (1973), 55 Ill.2d 121; *Crafton v. Lester B. Knight & Associates, Inc.* (1970), 46 Ill.2d 533; *Gannon v. Chicago, Milwaukee, St. Paul and Pacific Ry. Co.* (1961), 22 Ill.2d 305.) Consistent with that policy, we agree with the appellate court that under the terms of this contract and facts of this case the unloading may fairly be viewed as an integral part of the erection operation. We find little similarity between this case and the facts in *Crafton*, relied upon by defendant, and consider that case adequately distinguished in the appellate court opinion.

Similarly, we believe the appellate court opinion sufficiently refutes Commonwealth Edison's contentions that it could not be held to be "in charge of" the work. Considering that the contractual provisions required the contractor's personnel to consult with defendant's representatives as to the methods of unloading and bringing the equipment into the building for erection, that the work was, pursuant to the contract, to be done in a safe and proper manner in compliance with the Structural Work Act, that defendant had the right to stop the work if its representatives concluded such work was not being performed safely, that defendant's prior approval of all subcontractors was necessary and that it could direct the removal of any unfit or unskilled employee of the

contractor or subcontractor, and that there were at least seven or eight Commonwealth Edison employees, including five or six engineers, on the job site during construction for purposes of inspecting the work, we believe there was sufficient evidence to warrant submitting to the jury the issue whether defendant was "in charge of" the work. *Miller v. DeWitt* (1967), 37 Ill.2d 273; *Kobus v. Formfit Co.* (1966), 35 Ill.2d 533; *Larson v. Commonwealth Edison Co.* (1965), 33 Ill.2d 316.

The judgment of the appellate court is accordingly affirmed.

*Judgment affirmed.*

MR. JUSTICE RYAN, dissenting:

Section 1 of the Structural Work Act (Ill. Rev. Stat. 1963, ch. 48, par. 60) specifies the particular activities to which the legislature has extended the benefits of the special cause of action which the Act creates. The purpose of the Act, as gathered from the provisions of section 1, is to protect employees and others on or about a construction site from the special dangers inherent in the use of mechanical and other contrivances mentioned in section 1 when these contrivances are used "in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure." The activities covered are clearly specified by the statute. The legislature has not extended the special benefits of the Act to all construction activities. Also, all activities carried on in the immediate construction area do not enjoy the benefits of the Act. This court has held that the statutory purpose was "to prevent injuries to persons employed in this dangerous and extra-hazardous occupation, so that negligence on their part in the manner of doing their work might not prove fatal." *Schultz v. Henry Ericsson Co.,* 264 Ill. 156, 164; *Gannon v. Chicago, Milwaukee, St. Paul and Pacific Ry. Co.,* 22 Ill.2d 305, 318.

This court has also stated that a liberal construction of

the Act is necessary to carry out the clear purpose of the legislature. (*Gannon v. Chicago, Milwaukee, St. Paul and Pacific Ry. Co.; Crafton v. Knight & Associates, Inc.,* 46 Ill.2d 533.) However, this court also stated in *Crafton* that despite the fact that a liberal construction of the Act is within the clear purpose of the legislature, "The Structural Work Act has never been interpreted nor is it the opinion of this court that the legislature intended the statute to cover any and all construction activities whatsoever." 46 Ill.2d at 536.

The employee in this case was injured while unloading a heavy piece of equipment which at some time in the future was to be installed in a structure. Admittedly, the work in which he was engaged was dangerous. However, the danger inherent in his work had no peculiar connection with the construction of the structure in which the equipment was to be installed. The employee was exposed to the same hazard he would have been exposed to if the equipment which was being unloaded from the gondola car were simply going to be stored for future delivery to some yet undesignated destination or if it were being unloaded for the purpose of being scrapped. The majority opinion attaches importance to the fact that a crane which was available should have been used to hold the pedestals while the rods and welded plates were being cut. However, the dangers inherent in the use or failure to use a crane in this situation were not the dangers peculiar to the use or failure to use a crane in "the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure," which are the activities specified in the Act as enjoying its special benefits. The use or failure to use the crane in our case related to the unloading of this 20,000-lb. piece of equipment from a gondola car for the purpose of storing it on a temporary storage site. The crane was not to be used for one of the purposes specified in section 1. I do not think this activity comes within the purpose of the Act.

The majority opinion accepts the appellate court's disposition of the constitutional questions that were raised. However, I do not feel that the appellate court came to grips with the constitutional issue involved. If the Structural Work Act is construed to cover the injured employee in this case, I feel that through construction an arbitrary classification has been created. The appellate court opinion refers to *Chicago Dock & Canal Co. v. Fraley,* 228 U.S. 680, 57 L. Ed. 1022, and quotes from that opinion to the effect that the danger involved in a particular occupation is a test upon which an acceptable classification can be based. As I have pointed out above, the danger to which our employee was exposed was not a danger peculiar to the extra-hazardous work covered by the Act but was a danger inherent in the work of unloading the equipment from the gondola car. It was the same danger that any other employee would have been exposed to who may have been unloading a similar piece of equipment for a purpose other than to be installed in a structure. Thus, the classification stemming from the construction of the appellate court is not based on the danger involved but upon the particular purpose for which the item of equipment is ultimately to be used. I feel such a classification is arbitrary and bears no reasonable relation to the evil sought to be remedied by the legislature.

For these reasons, I would reverse the judgment of the appellate court.

SCHAEFER and DAVIS, JJ., join in this dissent.