WILLIAM H. MATTHEWS, Plaintiff-Appellant, *v.* COMMONWEALTH EDISON COMPANY, Defendant-Appellee.—(CATERPILLAR TRACTOR CO. *et al.*, Defendants.)

First District (3rd Division)    No. 79-1381

Opinion filed November 26, 1980.

Pfeffer, Becker, Gabric & Cerveny, of Chicago (Joseph Cerveny and Dario A. Garibaldi, of counsel), for appellant.

Lord, Bissell & Brook, of Chicago (Michael R. Munholland and Hugh C. Griffin, of counsel), for appellee.

Mr. JUSTICE SIMON delivered the opinion of the court:

■■ The Structural Work Act (Ill. Rev. Stat. 1977, ch. 48, pars. 60 *et seq.*) was enacted to protect workers in dangerous and extra-hazardous occupations. Its coverage is extensive, but it is not all-encompassing. To come under the Act's coverage, a case must feature harm caused by a failure of something a worker is using to support himself. Where that feature is missing there can be no liability under the statute. The plaintiff in this case was injured, but not because of a failure or defect in what he was relying upon for support. The circuit court's grant of summary judgment to the defendant is therefore affirmed.

In 1974 Commonwealth Edison was extending a high-tension transmission line south and west from its Joliet generating station. To build the line, steel towers were erected at intervals of roughly 1400 feet and wire strung among them. The wire was fed onto the towers from large spools which were transported to the site on trucks. Part of the line passed through a wooded area and, although a subcontractor had initially cleared a path for the line, additional trees had to be cleared to provide a spot for the spools during the wire stringing.

The plaintiff, William H. Matthews, was told by his foreman to clear such a spot. Matthews was directed to a Caterpillar D6 bulldozer which was warmed up and waiting to do the job. The D6 did not have a roll bar or an enclosed cab. A D8 bulldozer, a larger vehicle with an operator's seat encased in a protective wire mesh, was on the jobsite but was some distance away from the area Matthews was to clear. Matthews used the D6, knocking down the stand of trees, the height of which varied up to 30 feet, with the bulldozer's blade. He drove the tractor into the trees and uprooted them with the upraised blade. As he backed away from the stand he pulled the uprooted trees with him. While pushing some trees, uprooted but still upright, one fell towards Matthews on the open seat of the D6. When Matthews threw up his arm to deflect the tree, it struck him and shattered his wrist.

Matthews collected workmen's compensation and then sued Commonwealth Edison. The circuit court granted summary judgment to the defendant, and Matthews appealed. He claims that, under the undisputed facts, there was violation of the Structural Work Act and that it was error to enter summary judgment in the defendant's favor. The Structural Work Act provides, in pertinent part:

> "That all scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and construc-

ted, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, * * * in such manner as to prevent the falling of any material that may be used or deposited thereon." Ill. Rev. Stat. 1977, ch. 48, par. 60.

Matthews was not engaged on any "scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances" when he was injured.

■■ The purpose of the Structural Work Act is to protect persons employed in dangerous and extra-hazardous occupations which require them to be on or make use of scaffolds or like contrivances. (*Wright v. Synergistics, Inc.* (1977), 52 Ill. App. 3d 233, 235, 367 N.E.2d 466, 467.) Under the rule of *ejusdem generis*, the term "other mechanical contrivance" should be construed to include types of apparatus similar to scaffolds, hoists, cranes, stays, ladders or supports. (See *Farley v. Marion Power Shovel Co.* (1975), 60 Ill. 2d 432, 436, 328 N.E.2d 318, 320.) The common feature of these is an artificial foundation bearing a load against gravity. Thus, to determine whether a piece of apparatus is a "mechanical contrivance" under the Act, one must look to the purpose to which the equipment is being put. (*Juliano v. Oravec* (1972), 3 Ill. App. 3d 835, 839, 279 N.E.2d 376, 380, *aff'd* (1973), 53 Ill. 2d 566, 569-70, 293 N.E.2d 897, 899.) "[T]he rule to be applied here should be that if the apparatus was intended to be and was put to temporary use to provide footing or support above the ground or floor for workmen at the time of the occurrence, it was a scaffold and within the purview of the Scaffold Act * * *." *Spiezio v. Commonwealth Edison Co.* (1968), 91 Ill. App. 2d 392, 405-06, 235 N.E.2d 323, 329.

Thus, the Act applies where an apparatus is being used to support a worker, regardless of whether the apparatus is an overhead crane (*Bounougias v. Republic Steel Corp.* (7th Cir. 1960), 277 F.2d 726), an airplane hangar door (*Skinner v. United States* (E.D. Ill. 1962), 209 F. Supp. 424), a plank laid across a concrete form (*Frick v. O'Hare-Chicago Corp.* (1966), 70 Ill. App. 2d 303, 217 N.E.2d 552), a wheelbarrow and mortar mixer (*Acquaviva v. Sears Roebuck & Co.* (1979), 68 Ill. App. 3d 588, 386 N.E.2d 381) or a forklift (*Testa v. Kaluzny Brothers* (1974), 23 Ill. App. 3d 841, 320 N.E.2d 114).

■■ The plaintiff's injury occurred while he was on the D6 tractor. The D6 was being used to knock down trees, not to provide a platform on which Matthews was to work. The injury occurred not because the D6 was an inadequate foundation, but because a tree fell on the plaintiff. This tractor as it was being used by the plaintiff at the time he was injured was therefore not a "mechanical contrivance" under the Act.

This is not to say that a tractor could never be a "mechanical contrivance." The determining factor is whether the tractor is being used as a device for supporting the injured worker. (Compare *Oldham v. Kubinski* (1962), 37 Ill. App. 2d 65, 185 N.E.2d 270, where a similar tractor was covered by the Act but only because it was equipped with an elevated scoop bucket on which a worker was standing for support; see also *Crafton v. Lester B. Knight & Associates, Inc.* (1970), 46 Ill. 2d 533, 263 N.E.2d 817, where the Act did not apply to an accident in which the plaintiff fell off a similar tractor he was using for transportation instead of support.)

The cases cited by plaintiff, *Burke v. Illinois Power Co.* (1978), 57 Ill. App. 3d 498, 373 N.E.2d 1354, and *McNellis v. Combustion Engineering, Inc.* (1973), 13 Ill. App. 3d 733, 301 N.E.2d 96, are inapplicable because in each a crane was involved. In *Burke* the crane was being used improperly; in *McNellis* it was the failure to use a crane which was the basis of liability. (*McNellis* was later appealed to the supreme court, but the issue of how the Structural Work Act was applicable was never addressed. *McNellis v. Combustion Engineering, Inc.* (1974), 58 Ill. 2d 146, 317 N.E.2d 573.) Because the Act literally covers cranes, the interpretation of "other mechanical contrivances" was not at issue in either case.

It is true, as the plaintiff points out, that Matthews was in the D6 operator's seat instead of on the ground. To this extent the tractor was being used as a support. But this support element was not the proximate cause of the injury. Matthews was not injured because his support failed. He did not fall off the tractor, but was instead struck from above. Thus, the defendant could not be liable under the Structural Work Act from such an interpretation of "mechanical contrivance." See *Grabner v. American Airlines, Inc.* (1980), 81 Ill. App. 3d 894, 900, 401 N.E.2d 1196, 1202.

■■ The plaintiff argues that, even if the D6 tractor was not a "mechanical contrivance," the decision to use it to remove the trees instead of some other device, say, a crane, hoist or stay, brought the accident within the Act. Failing to provide any scaffolding or support is just as much a violation of the Act as providing faulty ones. (*Louis v. Barenfanger* (1968), 39 Ill. 2d 445, 449, 236 N.E.2d 724, 726.) But the foundation or support which the plaintiff urges should have been provided here was for the falling tree, be it a crane to hold it from above, stays to keep it from falling down or mesh protection on the D6 to keep the tree off the operator. That kind of protection is not covered by the Act. The Act does not mandate every kind of support on a construction site, but only those which serve as a source of support for a worker.

The plaintiff urges that *any* failure in support can bring liability under the Act if sufficiently connected to the construction of a structure. He cites *Navlyt v. Kalinich* (1972), 53 Ill. 2d 137, 290 N.E.2d 219, for the

principle that inadequate shoring falls under the Act if that which is to be supported falls on a worker. But *Navlyt* did not address the issue of whether shoring which is not meant to support workers constitutes a "mechanical contrivance" under the Act. " 'The narrowly defined issue is whether the decedent, killed by the collapse of a trench, \* \* \* was working on or about a "house, building \* \* \* or other structure" within the meaning of the act.' " 53 Ill. 2d 137, 138.

*Navlyt* mentioned in passing that inadequate shoring could be covered by the Act, but did so only by citing *Miller v. DeWitt* (1967) 37 Ill. 2d 273, 226 N.E.2d 630. The supreme court in that case adopted the appellate court opinion on the Structural Work Act issue. The appellate court had noted that the shoring was literally a support and so literally covered by the Act. (*Miller v. DeWitt* (1965), 59 Ill. App. 2d 38, 127, 208 N.E.2d 249, 291.) But it must be noted that in *Miller* the shoring which collapsed to spark the suit was holding up a gymnasium roof on which workers were standing. Thus, liability was based on the failure of a foundation on which workers relied for their own support.

The plaintiff has cited no authority for the proposition that the Act extends to failures of any kind of foundation which proximately cause injuries to workers. To so extend the interpretation of "other mechanical contrivance" might well serve public policy, but such an extension should be left to the legislature. By its terms the Act is a statute intended to protect only certain workers in a narrow occupation, one unusually hazardous by its very nature. The Act should be generously interpreted to protect those who are covered by it. It should not be extended by unnatural interpretations, especially where the normal worker's compensation and tort remedies remain to give relief to an injured worker.

Because the tractor was not being used in this case as a support for Matthews, it cannot be characterized as a "mechanical contrivance" within the meaning of the Act. Consequently, it is not necessary to discuss the plaintiff's assertion that he was hurt while working on a "structure" as defined by the Act.

Judgment affirmed.

McGILLICUDDY, P. J., and RIZZI, J., concur.