PATRICK BULLISTRON, Plaintiff-Appellant, *v.* NORTHERN BUILDERS, INC., Defendant-Appellee.

First District (2nd Division)   No. 83—2121

■

Opinion filed September 4, 1984.

Corboy & Demetrio, P.C., of Chicago (Todd A. Smith and David A. Novoselsky, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, Charles H. Cole, and Joshua G. Vincent, of counsel), for appellee.

JUSTICE STAMOS delivered the opinion of the court:

Plaintiff Patrick Bullistron sued defendant Northern Builders, Inc., for injuries sustained by plaintiff while working on a job site owned by defendant. Defendant's motion for summary judgment was granted and plaintiff appeals.

On July 17, 1979, plaintiff was employed by Millgard Corporation as a construction laborer at a work site located in Wheeling. Millgard was working as a subcontractor to prepare foundations for a partially built warehouse owned by defendant, Northern Builders, Inc. Plaintiff's job involved working on a truck-mounted drilling rig which was being used to drill caissons for the building foundation.

At approximately 2 p.m. on July 17, 1979, plaintiff completed drilling the caissons for defendant's building. Several of Millgard's employees proceeded to change the oil in the drilling machine in order to prepare it to be moved from the job site. While changing the oil, the employees noticed that hydraulic fluid was leaking from an area surrounding a part called a Kelly bar. In order to reach the leaking hydraulic fitting, plaintiff's supervisor directed that the machine be driven alongside a partially completed brick wall which had been put up by bricklayers to a height of approximately three feet.

In order to loosen the cup at the base of the Kelly bar to get at the packing which was causing the leak, the plaintiff and another employee used a "chain dog" wrench. Plaintiff and the other employee stood atop the three-foot wall and passed the wrench to each other as the cup rotated. Once the packing was replaced, they began tightening the cup with the wrench until it became too difficult. At this point, plaintiff and the other employee located a piece of scrap lumber and wedged it between the cup and a part of the machine. This allowed for further tightening of the cup by use of the machine's power. As plaintiff stood atop the three-foot wall, the machine was turned on

and the Kelly bar turned and the cup began tightening. As the tightening continued, the piece of wood apparently popped loose and struck plaintiff, knocking him off the wall and injuring him.

Based upon the foregoing facts, the trial judge granted defendant's motion for summary judgment. Plaintiff appeals.

The statute which is the subject of this appeal is commonly referred to as the Illinois Structural Work Act and provides as follows:

> "That all scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon." (Ill. Rev. Stat. 1979, ch. 48, par. 60.)

In his complaint, plaintiff alleged that the wall he was standing on while repairing the truck-mounted drilling rig was constructed in an unsafe manner and that as a proximate result of this faulty construction, he was injured. In its motion for summary judgment, defendant asserted that the drilling rig which plaintiff was repairing did "not constitute a house, building, bridge, viaduct, or other structure within the requirements of the Illinois Structural Work Act" and that therefore no valid cause of action could be stated against Northern Builders, Inc. under the Act. Both parties argued their respective theories before the trial judge.

Initially, plaintiff submits that the trial court based its grant of summary judgment on the fact that no construction work was being done at the time plaintiff was injured. The record does contain colloquy indicating that the court was exploring the relevance of the fact that the drilling rig was being repaired after the construction work had ceased. However, the colloquy immediately preceding the court's ruling revealed that the issue the court had focused on was whether the drilling rig was a "structure" under the Structural Work Act. In the course of granting defendant summary judgment, the court stated that:

> "Granting, as the case of Cooley cites, he is standing on the structure. I think I agree with you that Cooley does not involve the man standing on the structure, but that seems to be imma-

> terial because *that portion of the act indicates what his activities are directed to*. That is the problem we have. For that reason, I will sustain the motion." (Emphasis added.)

Although the court was not as precise as it could have been, we find that the court's ruling was based on the finding that the drilling rig did not qualify as a "structure" under the Structural Work Act. The court's references to the *Cooley* case do not convince us otherwise because *Cooley* held, *inter alia*, that the crane involved in that case was not a "structure" under the Act. See *Cooley v. Central Illinois Public Service Co.* (1982), 110 Ill. App. 3d 685, 691-92, 442 N.E.2d 1330.

In determining what constitutes a "structure" under the Structural Work Act, we are guided by the supreme court's rulings in *McNellis v. Combustion Engineering, Inc.* (1974), 58 Ill. 2d 146, 317 N.E.2d 573, and *Farley v. Marion Power Shovel Co.* (1975), 60 Ill. 2d 432, 328 N.E.2d 318. In *McNellis*, a workman received fatal injuries while unloading 20,000 pound pedestals from a railroad car located one-half mile from the construction site of a power-generating plant. The pedestals were to be installed as part of the plant's steam generating units. As the metal plates which secured the pedestals were cut loose, one of the pedestals fell, pinning the workman to the railroad car. Cranes were available to assist in the unloading but were not used. The construction contract provided that the general task of erecting the generators within the power station would necessitate the incidental tasks of unloading and storage, and the nature of the work required that unloading be performed some distance from the actual building. Defendant argued that the unloading of equipment was not a structural work activity. The supreme court rejected this argument, stating that "under the terms of this contract and facts of this case the unloading may fairly be viewed as an integral part of the erection operation." 58 Ill. 2d 146, 151.

In *Farley*, the plaintiff was injured while aiding in the assembly of a self-propelled power shovel of mammoth proportions which was to be used to strip-mine coal. The issue before the court in *Farley* was whether this power shovel, which was admittedly larger than many buildings, was a "structure" within the meaning of the Structural Work Act. The court focused on that portion of the Act which provided that the work covered by the Act must be directed to "any house, building, bridge, viaduct, or other structure ***." (Ill. Rev. Stat. 1981, ch. 48, par. 60.) Particular attention was directed to the legislature's choice of the phrase "or other structure." The court held that under the doctrine of *ejusdem generis*, the "plain purpose [of the Act was] to limit the application of our statute to structures of the

general type specified therein." (60 Ill. 2d 432, 436-37.) The doctrine of *ejusdem generis* provides that:

> "where a statute or document specifically enumerates several classes of persons or things and immediately following, and classed with such enumeration, the clause embraces 'other' persons or things, the word 'other' will generally be read as 'other such like,' so that the persons or things therein comprised may be read as *ejusdem generis* 'with,' and not of a quality superior to or different from, those specifically enumerated." (*Farley v. Marion Power Shovel Co.* (1975), 60 Ill. 2d 432, 436, quoting *People v. Capuzi* (1960), 20 Ill. 2d 486, 493-94, 170 N.E.2d 625.)

Applying this doctrine to the instant case, it is apparent that the drilling rig in issue is not a "structure" under the Act. Accordingly, we find that plaintiff was not engaged in work covered by the Structural Work Act at the time of his injury and that summary judgment was properly entered in defendant's favor.

■ We note that the work involved in *Farley* was strip-mining rather than the conventional construction work involved in *McNellis*. In rendering its decision, however, the court in *Farley* did not suggest that this factor influenced its decision. Indeed, the *Farley* court alluded to its holding in *McNellis* and explained that the holding in that case was grounded in large part on the contract provisions involved. (60 Ill. 2d 432, 437.) Had the nature of the work involved in *Farley* been a critical factor in the court's decision, the court would surely have pointed this out in its reference to *McNellis*. For the foregoing reasons, we interpret *Farley* as being applicable to Structural Work Act cases generally and as a limitation on the scope of the holding in *McNellis*. Upon reviewing the circumstances in *McNellis* together with the holding in *Farley*, we conclude that the Structural Work Act covers work performed on the structure itself or preliminary work involving material which will ultimately be incorporated as part of the structure.

We have examined *Simmons v. Union Electric Co.* (1984), 121 Ill. App. 3d 743, 460 N.E.2d 28, cited by plaintiff, and we find it to be unpersuasive. In *Simmons*, the plaintiff was sent to a power plant following some flooding in an ash pit. The plaintiff repaired permanent sump pumps which had malfunctioned and then endeavored to repair a temporary sump pump at the bottom of the pit which had also malfunctioned. While descending a ladder into the pit, the plaintiff slipped and fell and was injured. The plaintiff sued for his injuries and was granted judgment on his Structural Work Act count. On appeal,

the defendant contended that the plaintiff was not involved in structural work at the time of his injuries because the temporary sump pump which was being repaired was not a "structure" under the Act. The *Simmons* court viewed this contention as an unduly narrow view of the scope of the Act. The court opted instead to view the situation in a broad context to determine if the plaintiff's specific activity at the time of the injury was an integral part of a larger project which qualified as structural work under the Act. Under this approach, the *Simmons* court found that the plaintiff was sent to the power plant to repair the ash pit, which was found to be a structure, and that the repair of the temporary sump pump was an integral part of this work, thereby bringing the plaintiff's activities within the Act's coverage.

The court's holding in *Simmons* does not contain a single citation to *Farley*. Rather, the analysis focuses on the propositions set forth in *McNellis* that the Act is to be liberally construed and that actions which are an integral part of the construction process are covered by the Act. (121 Ill. App. 3d 743, 751.) We deem it important to point out that the activities in *McNellis* were held to be covered under the Act because they were "an integral part of the *erection operation*." (Emphasis added.) (58 Ill. 2d 146, 151.) This phrase does not extend the Act's coverage to the myriad of activities which are a vital part of any construction project; rather, it serves as recognition that much of the preliminary construction directly leading to the erection of a building or other structure is not performed on the structure itself. (See 58 Ill. 2d 146, 150.) This interpretation finds its support in *Farley*, which circumscribed the seemingly boundless propositions contained in *McNellis*. We believe that the approach taken in *Simmons* expands the Act beyond its intended scope. Whether the hazards involved in *Simmons* and the instant case are such that the Act's protection should be extended to them is for the legislature to determine. See *Farley v. Marion Power Shovel Co.* (1975), 60 Ill. 2d 432, 437, 328 N.E.2d 318.

For the reasons expressed herein, the judgment of the circuit court is affirmed.

DOWNING and PERLIN, JJ., concur.