LORENZ BECK SEEDEN, Plaintiff-Appellant, v. METROPOLITAN SANI-
TARY DISTRICT OF GREATER CHICAGO *et al.*, Defendants-Appellees
(Material Service Corporation, Third–Party Defendant-Appellee).

First District (1st Division)   No. 87—1281

Opinion filed June 27, 1988.

Asher, Pavalon, Gittler & Greenfield, Ltd., of Chicago (Geoffrey L. Gifford, of counsel), for appellant.

Gould & Ratner, of Chicago (Louis R. Hegeman and Jay D. Stein, of counsel), for appellee Material Service Corporation.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini, Robert L. Reifenberg, and Richard R. Winter, of counsel), for other appellees.

JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff, Lorenz Beck Seeden, brought this action to recover damages for injuries she allegedly sustained while working as a truck driver for Material Service Corporation (MSC). In count I, plaintiff sought recovery under the Structural Work Act (the Act) (Ill. Rev. Stat. 1985, ch. 48, par. 60 *et seq.*); in count II, plaintiff alleged a cause of action based on common law negligence. Summary judgment was entered on count I in favor of defendants Metropolitan Sanitary District of Greater Chicago, S. A. Healy Company, E. J. Albrecht Company and Vanessa General Builders, Inc., and third-party defendant Material Service Corporation (MSC). Count II remains pending below. Plaintiff has appealed the summary judgment against her on count I, presenting the following issue for review: whether a personal injury cause of action is cognizable under the Structural Work Act based on allegations that the defendant failed to provide adequate supports for construction materials. We affirm.

Plaintiff was a truck driver employed by MSC on December 4, 1981, when she delivered a load of concrete to the "Deep Tunnel" construction project at 127th and Sacramento in Blue Island. Upon arriving at the delivery site, she backed her cement truck to the edge of a 45-degree downgrade which sloped approximately 50 feet downward to a hole in the ground. The hole in turn led to an extensive underground excavation.

The cement was to be delivered at a point approximately 45 feet down the grade; however the cement truck chutes extended only 12 to 15 feet in length. To compensate for the inadequate length of the chute, laborers attached an auxiliary chute to the chutes attached to the cement truck. The auxiliary chute was attached with hooks which fit into eyelets on the cement truck chutes. Additionally, the hookup

was secured by a chain and locking system. When assembled, the chute extended down and paralleled the 45-degree slope at a point approximately four feet above the ground level. The plaintiff testified that the auxiliary chute overlapped the Material Service chute by 2½ to 3 inches but that the chutes did not fit firmly together.

After the chutes were connected, Ms. Seeden began discharging cement from her truck. The chute normally had a tendency to drift to the left (*i.e.*, the passenger's side of the vehicle) when cement was being discharged. Because the auxiliary chute was attached, the force of the leftward drift was transferred to the auxiliary chute, causing it to twist where the chutes were joined. The twisting of the chutes caused the cement to spill on the ground so plaintiff immediately stopped discharging the cement.

The laborers attempted to adjust the chutes so that they fit together more snugly. They adjusted the juncture of the MSC chutes and the auxiliary chutes and secured them with a wire which they inserted through a flange on the MSC chute. They also wedged a five-foot two-by-four piece of lumber between the ground and the chute to minimize the leftward drift.

Plaintiff again began to discharge cement. To assure that the leftward drift of her chutes would not twist the auxiliary chute, Ms. Seeden leaned against the chutes with her hands. The auxiliary chutes and the Material Service chutes then separated, causing the Material Service chute to "kick" sharply to the left. The "kick" caused Ms. Seeden to bend backwards, resulting in severe back injuries.

In deposition testimony, the plaintiff testified that she did not fall and was not struck by any object. There was no evidence indicating that the two-by-four moved or failed to support the chutes. The trial court held that the Structural Work Act was inapplicable to a cause of action based on allegedly inadequate support for materials and granted summary judgment for defendants. This appeal followed.

■■ In determining whether a trial court properly granted summary judgment, a reviewing court must decide whether the trial court was correct in finding that no genuine issue of material fact was raised, and, if none was raised, as a matter of law entry of the judgment was proper. *Carnevale v. Inland Ryerson Building Systems* (1988), 169 Ill. App. 3d 740.

As the facts surrounding Ms. Seeden's injury are undisputed, we must determine whether as a matter of law the injury occurred as the result of a violation of the Structural Work Act. Plaintiff's position is that the Structural Work Act is triggered because the wooden two-by-four was a "support" for the cement chute and because the metal

chain wrapped around the chute was a "mechanical contrivance" which also supported the cement filled chute.

She contends that defendants violated the Act when they failed to provide adequate support for the chutes, the movement of which caused her to lose her balance and sustain injury. Defendants respond that the Act is not applicable to the case at bar because plaintiff was not injured by falling materials and was not engaged in an extrahazardous activity and the material allegedly being supported was only slightly above ground level. Although the basis of the trial court's ruling was that the Act applied to supports for workers and not to supports for materials, defendants maintain that the issue for review is not whether the Act extends to support for materials, rather than being limited to supports for workers, but whether under the circumstances here, the plaintiff is entitled to the protection of the Act.

■ In pertinent part, the Act provides:

"That all scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon." (Ill. Rev. Stat. 1985, ch. 48, par. 60.)

The purpose of the Act is to protect construction workers engaged in extrahazardous activity. *Vuletich v. United States Steel Corp.* (1987), 117 Ill. 2d 417, 421-22, 512 N.E.2d 1223.

Although the Act was intended to be liberally construed, our courts have regularly noted that the Act was not intended to cover any and all injuries that occur on construction sites. (*Crafton v. Lester B. Knight & Associates, Inc.* (1970), 46 Ill. 2d 533, 536, 263 N.E.2d 817; *Carnevale v. Inland Ryerson Building Systems* (1988), 169 Ill. App. 3d 740.) Even if one of the devices enumerated in the Act is involved, the Act does not apply unless the injury has some connection with the hazardous nature of the devices named in the Act. See, *e.g.*, *Quinlan v. Northwestern Steel & Wire Co.* (1985), 139 Ill. App. 3d 535, 537-38, 487 N.E.2d 1124; *Cooley v. Central Illinois Public Service Co.* (1982), 110 Ill. App. 3d 685, 690, 442 N.E.2d 1330.

In support of her contention that her injury was caused by a failure to provide adequate support for the cement chutes, plaintiff relies on *Prange v. Kamar Construction Corp.* (1982), 109 Ill. App. 3d 1125, 441 N.E.2d 889, and *Urman v. Walter* (1981), 101 Ill. App. 3d 1085, 428 N.E.2d 105, *appeal denied* (1982), 91 Ill. 2d 557. In *Prange*, the plaintiff was crushed by metal poles he was carrying on a forklift truck when the poles rolled off the lift mechanism of the truck. In holding that the Structural Work Act applied, the *Prange* court stressed that the Act was intended to protect against injuries caused by the collapse of a support device or the falling of any material from the device. *Prange*, 109 Ill. App. 3d at 1129, citing *Urman v. Walter* (1981), 101 Ill. App. 3d 1085, 428 N.E.2d 105.

In *Urman*, the plaintiff, a structural ironworker, was injured when inadequately supported roofing trusses fell upon him. The court on appeal held that where the injured party, in the performance of his work, is struck by unsupported trusses, he can recover if the jury finds that the proximate cause of the injury was defendant's failure to provide necessary supports in violation of the Act. (*Urman*, 101 Ill. App. 3d at 1096.) Plaintiff urges this court to follow *Prange* and *Urman* and to resolve the question as to whether the Act is applicable to supports for material or solely to supports for workers.

Contrary authority, relied upon by the trial court, holds that the Act applies solely to support for workers and specifically does not apply to injuries caused as a result of the failure to provide or inadequacy of support for materials. (See, *e.g.*, *Matthews v. Commonwealth Edison Co.* (1980), 90 Ill. App. 3d 1024, 414 N.E.2d 147 (holding that to come under the Act, the harm must be caused by a failure of something a worker is using to support himself); *Carlson v. Moline Board of Education* (1984), 124 Ill. App. 3d 967, 464 N.E.2d 1239, *appeal denied* (1984), 101 Ill. 2d 563 (holding that the devices described in the Act generally refer to contrivances on which a workman is dependent for support).) While the plaintiff has suggested that the resolution of the case before us requires us to decide whether *Prange* and *Urman* should prevail over *Matthews* and *Carlson*, we do not believe we need to resolve the apparent conflict between those cases in order to resolve the issue here, as there is no contention here that Ms. Seeden was injured by falling construction materials as were the plaintiffs in *Prange* and *Urman*.

■ First, we are not persuaded that a failure of a support, as that term has been construed under the Act, was the cause of plaintiff's injury. At various times plaintiff's position was that the support was the ground, the five-foot two-by-four, the wire connecting the

chutes, or the chain which was wound around the chutes to stabilize them. On appeal, there is no contention, however, that the ground was a support. There also is no evidence that the lumber two-by-four failed to support the chutes, and based on plaintiff's activity in delivering cement, we do not believe that any of the other alleged supports come within the purview of the Act.

In *Louis v. Barenfanger* (1968), 39 Ill. 2d 445, 450, 236 N.E.2d 724, *cert. denied* (1968), 393 U.S. 935, 21 L. Ed. 2d 271, 89 S. Ct. 296, the Illinois Supreme Court considered the scope of the supports that were included within the Act and stated:

> "[The devices described in the Statute] would reasonably include any temporary structure made up of parts, viewing the term in its broadest scope, used for support while doing any kind of work mentioned in the law, any kind of an elevated platform for workmen to use in the performance of their duties. Any combination for use in doing any kind of work mentioned in the statute where the servant is dependable thereon for support, in place of an ordinary surface, such as the ground or floor, is a mechanical contrivance," *Louis v. Barenfanger* (1968), 39 Ill. 2d 445, 450, 236 N.E.2d 724, *cert. denied* (1968), 393 U.S. 935, 21 L. Ed. 2d 271, 89 S. Ct. 296, quoting *Keopp v. National Enameling & Stamping Co.* (1912), 151 Wis. 302, 139 N.W. 179.

Based on the rule set out in *Barenfanger* and its requirement that the plaintiff must have been dependent on the alleged support for her safety, plaintiff's claim here fails as she cannot show either that she was dependent on the stability of the chutes for her personal support or that she was injured when inadequately supported materials fell on her. Plaintiff has not been able to show that her injury resulted from the inadequacy or lack of any device used to elevate workers or materials or to provide support for them once they have been elevated. See *Quinlin v. Northwestern Steel & Wire Co.* (1985), 139 Ill. App. 3d 535, 538, 487 N.E.2d 1124.

■ Plaintiff also fails to come under the protection of the Act because she was not engaged in either hazardous or extrahazardous work at the time she was injured. A seminal requirement of the Structural Work Act, as held in *Ashley v. Osman & Associates, Inc.* (1983), 114 Ill. App. 3d 293, 298, 448 N.E.2d 1011, *appeal dismissed* (1983), 96 Ill. 2d 537, is that there must be some connection between the hazardous nature of one of the devices named in the Act and the injury incurred in order for a cause of action to be cognizable under the Act. See also *Vuletich v. United States Steel Corp.* (1987), 117 Ill.

2d 417, 423, 512 N.E.2d 1223.

Plaintiff contends that the failure to provide adequate support for the chutes created the type of risk the Act was intended to protect against, citing in support *McNellis v. Combustion Engineering, Inc.* (1974), 58 Ill. 2d 146, 317 N.E.2d 573. The plaintiff in *McNellis* was crushed while unloading a 20,000-pound steel pedestal to be used in construction of a power plant. The plaintiff brought an action under the Structural Work Act alleging failure to use cranes and wire cable to support the steel pedestal.

In holding that the Act applied, the *McNellis* court noted that the unloading being done by McNellis was a hazardous operation because of the weight and size of the pedestals and that it should have been apparent to everyone involved that there was a strong risk of serious injury or death if the unloading was done improperly. (*McNellis*, 58 Ill. 2d at 151.) As the court later pointed out in *Farley v. Marion Power Shovel Co.* (1975), 60 Ill. 2d 432, 328 N.E.2d 318, the result in *McNellis* was bottomed in large measure upon certain contract provisions involved which defined the unloading of the pedestals as an integral part of the construction process. The *Farley* court's interpretation of *McNellis*, therefore, substantially limits its applicability to other cases. Moreover, the circumstances in the present case are substantially different from those in *McNellis*. Plaintiff's duties as the driver of a cement truck were limited to driving to the construction site, positioning her truck, attaching the cement chutes and activating the vehicle's controls to discharge the cement. The discharge of cement is a commonplace activity on a construction site and does not constitute the kind of hazardous or extrahazardous construction task we believe was intended to be covered by the Act. See, *e.g.*, *Bullistron v. Northern Builders, Inc.* (1984), 127 Ill. App. 3d 242, 468 N.E.2d 1281, *appeal denied* (1984), 101 Ill. 2d 581.

We conclude that the trial court did not err in granting defendants' motions for summary judgment and dismissing count I of plaintiff's second amended complaint. Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

BUCKLEY and QUINLAN, JJ., concur.