PAUL WELLSTON, Plaintiff-Appellant, v. THE LEVY ORGANIZATION, INC., *et al.*, Defendants-Appellees (Crescent Corporation, Third-Party Defendant).

Second District   No. 2—87—0333

Opinion filed October 7, 1988.

George N. Avgeris, Chartered, of Hinsdale (George N. Avgeris, of counsel), for appellant.

Kralovec, Marquard, Doyle & Gibbons, Chartered, of Wheaton (Michael L. Handley, of counsel), for appellees The Levy Organization, Inc., The Schal Associates, Inc., and Skidmore, Owings & Merrill.

James F. Best and Sarah E. Chapin, both of Fraterrigo, Best & Beranek, of Chicago, for appellee Mazur Construction Company.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiff, Paul Wellston, appeals from an order granting summary judgment to defendants The Levy Organization, Inc., The Schal Associates, Inc., Skidmore, Owings & Merrill, and the Mazur Construction Co. and to third-party defendant, the Crescent Corp. (Crescent), on count I of plaintiff's third amended complaint, which alleged violations of the Structural Work Act (Act) (Ill. Rev. Stat. 1981, ch. 48, pars. 60 through 69). The sole issue raised on appeal is whether the trial court erred in ruling that the Structural Work Act was inapplicable as a matter of law to the facts surrounding plaintiff's injury.

This case arose out of an accident that occurred on February 13, 1983, during the construction of the One Magnificent Mile building in Chicago. Plaintiff was employed as an ironworker on the project by Crescent, which was a subcontractor hired to install windows in the building. Crescent's employees did not install any windows on the day of plaintiff's injury, however. At the time, the 42d floor had a roughly finished floor and outside walls, but the windows had not yet been installed and there were large, unprotected window openings through which the wind could pass. Plaintiff was part of an eight-man crew unloading window vents. Four of the men unloaded a truck on the ground floor and placed the windows on a hoist. Two other men unloaded the hoist on the 42d floor, where plaintiff and another man placed them on a cart and moved them to an area 50 to 60 feet from the hoist where they stored them for later installation. While transporting a cartload of windows, plaintiff passed a column against which were stacked 15 to 20 large metal fire doors, each weighing approximately 150 pounds. The doors were stacked vertically and were not secured to each other or to the column. As he passed the column, six of the doors fell over onto plaintiff and seriously injured him. Plaintiff did not know what caused the doors to fall and did not believe that the cart came into contact with the doors.

■■ ■ It is appropriate in Structural Work Act cases for a court to enter summary judgment where the relevant facts are not in dispute and the court determines that the Act is inapplicable as a matter of law to those facts. (See, *e.g.*, *Duffin v. Seibring* (1987), 154 Ill.

App. 3d 821, 831; *Page v. Corley Cos.* (1985), 131 Ill. App. 3d 56, 58.)
Section 1 of the Act provides:

> "[A]ll scaffolds, hoists, cranes, stays, ladders, supports, or
> other mechanical contrivances, erected or constructed by any
> person, firm or corporation in this State for the use in the erec-
> tion, repairing, alteration, removal or painting of any house,
> building, bridge, viaduct, or other structure, shall be erected
> and constructed, in a safe, suitable and proper manner, and
> shall be so erected and constructed, placed and operated as to
> give proper and adequate protection to the life and limb of any
> person or persons employed or engaged thereon, or passing un-
> der or by the same, and in such manner as to prevent the fall-
> ing of any material that may be used or deposited thereon."
> (Ill. Rev. Stat. 1983, ch. 48, par. 60.)

The Act affords a cause of action for injuries resulting from a willful
violation of its provisions. (Ill. Rev. Stat. 1983, ch. 48, par. 69.) Plain-
tiff contends that his claim is cognizable under the Act on two distinct
theories: (1) he was using the 42d floor of the building as a temporary
"support" or "scaffold" which was rendered unsafe, in violation of
the Act, by the presence of the unsupported doors; and (2) the defend-
ants' failure to use a "stay" or "support" to support the doors them-
selves was a violation of the Act.

■■ In determining whether a particular device constitutes a sup-
port under the Act, the court must focus not only on the identity of the
device but on its intended use at the time of the injury. (*Vuletich v.
United States Steel Corp.* (1987), 117 Ill. 2d 417, 422.) The court below
concluded that plaintiff was using the floor only as a floor, or pathway,
and that it therefore did not constitute a support under the Act. (See,
*e.g., Tenenbaum v. City of Chicago* (1975), 60 Ill. 2d 363, 370.) It is
unnecessary, however, to reach that issue, as the case law additionally
requires that there be some causal connection between the hazardous
nature of the support devices described in the Act and the injury suf-
fered by the plaintiff. (*Tenenbaum*, 60 Ill. 2d at 371; *Dvorak v. Primus
Corp.* (1988), 168 Ill. App. 3d 625, 631; *Langley v. J. L. Simmons Con-
tracting Co.* (1987), 152 Ill. App. 3d 899, 903.) Plaintiff's injury was
wholly unrelated to the risks occasioned by his use of the 42d floor as a
support. The floor did not fail to support plaintiff or the materials
stored there. Although plaintiff was injured by falling materials, those
materials did not fall from or through the floor or as a result of the
improper placement or construction of the floor. (Ill. Rev. Stat. 1983,
ch. 48, par. 60.) Plaintiff's use of the floor as a support therefore can-
not provide the basis for a Structural Work Act claim.

■ The more difficult issue is whether the defendants' failure to provide a stay or support for the doors was a violation of the Act. The failure to provide a scaffold or other support device can be the basis of a Structural Work Act claim. (*Louis v. Barenfanger* (1968), 39 Ill. 2d 445, 449.) The trial court rejected plaintiff's theory, however, holding that the Act applies only to devices used to support *workmen*. There is a division of authority in the case law on this issue.

In *Matthews v. Commonwealth Edison Co.* (1980), 90 Ill. App. 3d 1024, the Appellate Court sitting in the First District rejected the Structural Work Act claim of a plaintiff who was injured while using a bulldozer to clear trees from an area, and one of the trees fell onto him. The court concluded that the Act does not apply to supports or mechanical contrivances used to support something other than a person. 90 Ill. App. 3d at 1027.

Another panel of the Appellate Court sitting in the First District expressly rejected *Matthews* in the case of *Urman v. Walter* (1981), 101 Ill. App. 3d 1085. In *Urman,* the plaintiff was injured when some trusses stacked on the uneven ground inside a partially constructed building fell over onto his leg. The testimony at trial indicated that it was a standard practice in the industry to place trusses on heavy lumber so they could not roll. (101 Ill. App. 3d at 1088.) The court stated:

> "By its terms, section one provides that all 'scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances' used in constructing, or maintaining buildings or 'other structures' should be erected, placed and operated so as to protect 'persons employed or engaged thereon, *or* passing under or by the same, *and* in such manner as to prevent the falling of any material that may be used or deposited thereon.' (Emphasis added.) Two categories of persons are thus protected, those who are actually working on the support devices and those who pass by or under the same." (*Urman*, 101 Ill. 3d at 1091.)

The court concluded that to interpret all of the support devices named in the Act as synonymous with scaffolds would "judicially erase terms that the legislature thought important enough to include." (101 Ill. App. 3d at 1091.) It rejected the *Matthews* holding as unsupported by authority and concluded that three supreme court decisions indicated that support devices covered by the Act are not limited by "the scaffold concept." 101 Ill. App. 3d at 1094.

None of those supreme court decisions directly and conclusively addressed the issue, however. In *Miller v. DeWitt* (1967), 37 Ill. 2d 273, 286, the supreme court affirmed without discussion the appellate court's conclusion that the shoring used to hold up a gymnasium roof

during a remodeling project was covered by the Act. See *Miller v. DeWitt* (1965), 59 Ill. App. 2d 38, 127 (in which the appellate court held that the fact that the shoring was not used to support workers and their materials did not mandate the conclusion that they were not supports under the Act).

*Navlyt v. Kalinich* (1972), 53 Ill. 2d 137, involved a workman who was killed when the walls of a ditch in which he was working collapsed. The court concluded that the sewer system on which plaintiff was working was a structure covered by the Act. (53 Ill. 2d at 138-39.) The court, in its opinion, relying on *Miller*, noted that shoring or the failure to provide adequate shoring is within the purview of the Act. *Navlyt*, 53 Ill. 2d at 139.

In *McNellis v. Combustion Engineering, Inc.* (1974), 58 Ill. 2d 146, the court found the Act applicable in the case of a workman who was killed one-half mile from the construction site while unloading a pedestal from a railroad car. The pedestal, which weighed 20,000 pounds, was a component part of one of the generating units of a power plant under construction. The defendants failed to use an available crane to stabilize the upright and unstable pedestal as it was cut loose from the car and it fell over onto the decedent. The court found that under the unique contractual provisions involved, the unloading process was "an integral part of the erection operation." (58 Ill. 2d at 151.) The *McNellis* court did not address the fact that the crane would have been used only to support materials, but it noted that the testimony at trial indicated that a crane should have been used to hold the pedestal in place. 58 Ill. 2d at 149.

One other supreme court case is also relevant to this issue. In *Louis v. Barenfanger* (1968), 39 Ill. 2d 445, which preceded *Navlyt* and *McNellis*, the court quoted the following language from a Wisconsin decision which had interpreted the terms "scaffolding" and "mechanical contrivance" from a statute similar to the Structural Work Act:

> " 'The scope thereof would reasonably include any temporary structure made up of parts *** used for support while doing any kind of work mentioned in the law,—any kind of an elevated platform for workmen to use in the performance of their duties. Any combination for use in doing any kind of work mentioned in the statute where the servant is dependable thereon for support, in place of an ordinary surface, such as the ground or floor, is a mechanical contrivance. The Legislature, in the combination of words "scaffolding, hoists, stays, ladders or other mechanical contrivance," *** left little, if anything, un-

covered which may be used in the work mentioned, where required to be done beyond the reach of one standing on an ordinary surface.' " 39 Ill. 2d at 450, quoting *Koepp v. National Enameling & Stamping Co.* (1912), 151 Wis. 302, 314-15, 139 N.W. 179, 184.

A number of more recent appellate court decisions have also addressed the issue. In *Prange v. Kamar Construction Corp.* (1982), 109 Ill. App. 3d 1125, the Appellate Court sitting in the Fourth District found a tractor-forklift to be a support device under the Act. The plaintiff had been using the tractor to lift and transport some large poles when some of them fell from the forklift and injured him. In rejecting the defense's reliance on *Matthews*, the *Prange* court stated that narrowing the Act's applicability to devices used to support workmen ignores the fact "that the primary function of hoists, cranes and stays is not as support for men, but rather for materials." 109 Ill. App. 3d at 1130.

In *Carlson v. Moline Board of Education* (1984), 124 Ill. App. 3d 967, the court rejected the Structural Work Act claim of a plaintiff who was injured when an assembly of lockers weighing 4,000 pounds fell over onto him. The lockers had been detached from the floor so that plaintiff could remove and replace the floor tile. Relying on *Matthews* and the language quoted above form the *Barenfanger* opinion, the *Carlson* court found the Act applicable only to devices on which a workman depends for support. *Carlson,* 124 Ill. App. 3d at 974.

In *Quinlin v. Northwestern Steel & Wire Co.* (1985), 139 Ill. App. 3d 535, the plaintiff was injured when he was struck by a sheet of metal that had been lying flat on the roof where he was working, but which was lifted by a gust a wind. The court found the Act inapplicable. It distinguished *Urman* by stating that the uneven ground in that case had been an inadequate support for the trusses, whereas the roof in *Quinlin* adequately supported both plaintiff and the metal sheets. (*Quinlin,* 139 Ill. App. 3d at 538.) The *Quinlin* court stated that the Act covered devices "used to elevate workers and materials or to provide support for them once they have been elevated." 139 Ill. App. 3d at 537.

Most recently, in *Ryan v. E. A. I. Construction Corp.* (1987), 158 Ill. App. 3d 449, a panel of the Appellate Court sitting in the First District found the Act applicable to a workman on a scaffold who was injured when a wall, which he was in the process of dismantling, collapsed suddenly, causing debris to strike both the plaintiff and the scaffold. The scaffold broke and plaintiff fell through it, with material from the wall falling on top of him. The *Ryan* court rejected *Mat-*

*thews,* but did find that the Act protected persons from the falling of materials used or deposited on a support device, that the plaintiff was within that class of protected persons, and that the scaffold, though not itself defective, was covered by the Act. 158 Ill. App. 3d at 458-59.

Defendants urge this court to adopt the *Matthews* rationale as the trial court did. Only the supreme court decisions discussed above, however, create authority that is binding on this court. While the language quoted above from the *Barenfanger* opinion appears to mandate the restrictive construction of the Act which the *Matthews* court adopted, the supreme court's subsequent decisions in *Navlyt* and *McNellis* indicate that it has withdrawn from that position. Neither the shoring which the *Navlyt* defendants failed to provide, nor the crane which the *McNellis* defendants failed to use would have provided " 'an elevated platform for workmen to use in the performance of their duties.' " (*Barenfanger,* 39 Ill. 2d at 450, quoting *Koepp,* 151 Wis. at 314-15, 139 N.W. at 184.) In addition, the language of the Act itself does not limit its application to devices which support workmen. The *Prange* court correctly noted that hoists, cranes, and stays, devices to which the legislature expressly made the Act applicable, are things primarily associated with the lifting or support of materials rather than of men. (*Prange,* 109 Ill. App. 3d at 1130.) The courts have repeatedly held that the Act should be liberally construed to give effect to its purpose of protecting individuals engaged in extrahazardous occupations involving the construction, repair, alteration or removal of buildings or other structures. (*Vuletich,* 117 Ill. 2d at 422; *Innis v. Elmhurst Dodge, Inc.* (1985), 107 Ill. 2d 151, 155; *Dvorak,* 168 Ill. App. 3d at 629.) The *Matthews* rationale limiting the Act's application to devices used to support workmen is therefore inconsistent with the plain language of the Act, its protective purpose, and the supreme court's decisions in *Navlyt* and *McNellis.*

Defendants contend that the facts of this case are nevertheless distinguishable from those involved in *McNellis* and *Urman.* They argue that, at the time of his injury, the plaintiff was not using or moving the materials which fell on him, and that he was not actively engaged in a hazardous construction activity. (See *Vuletich,* 117 Ill. 2d at 424 (noting that the Act was intended to protect workmen engaged in particularly hazardous construction activities, rather than any construction activity).) The Act plainly affords protection, however, to persons who are simply "passing under or by" any of the support devices to which it applies. (Ill. Rev. Stat. 1983, ch. 48, par. 60.) It is clear that simply walking past a support for men or materials that is

inadequate for its load is a highly dangerous construction activity. In addition, the injury suffered by plaintiff was *directly* related to the hazards inherent in the use of (or failure to use) such devices. See *Tenenbaum*, 60 Ill. 2d at 371 (requiring a causal connection between the hazardous nature of support devices and the injury actually suffered by the plaintiff).

■■ Defendants additionally argue that, while the Act has been applied to a defendant who failed to use a crane (*McNellis*, 58 Ill. 2d at 149) or shoring (*Navlyt*, 53 Ill. 2d at 139) to stabilize or support materials, no case has applied the Act to a defendant who simply failed to attach a line or cable to building materials. (See *Quinlin*, 139 Ill. App. 3d 535 (holding the Act inapplicable to the defendant's failure to tie down some metal sheets); *Carlson*, 124 Ill. App. 3d 967 (holding the Act inapplicable to defendant's failure to brace a locker assembly).) The Act, however, itemizes several types of support devices, including the general terms "stays" and "supports," which could encompass a cable, line or toeboard, which might have supported the doors that fell on plaintiff. The Act does not purport to afford greater protection to workers injured by the failure of one type of support device than to those injured by the failure of another type. Moreover, the support which the defendants allegedly failed to supply here was of a type contemplated by the legislature, as it would have prevented building materials from falling *onto* the plaintiff. (Compare *McNellis v. Combustion Engineering, Inc.* (1973), 13 Ill. App. 3d 733, 742, *aff'd* (1974), 58 Ill. 2d 146 (holding the Act applicable to the defendant's failure to support a massive pedestal which fell *onto* the plaintiff), with *Quinlin*, 139 Ill. App. 3d at 538 (holding the Act inapplicable where the defendant failed to properly tie down materials to keep them from being blown into the plaintiff).) The trial court therefore erred in concluding that the Structural Work Act was inapplicable as a matter of law to the facts of this case.

For the reasons stated, we reverse the trial court's entry of summary judgment for the defendants on plaintiff's Structural Work Act claim and remand the case for trial.

Reversed and remanded.

INGLIS and WOODWARD, JJ., concur.